662 A.2d 1043

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Derek ELLIS, A/K/A Derek Reon Ellis, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 9, 1995.

Decided July 19, 1995.

288

Ira C. Houck, Jr., Public Defender, Shelley Stark, Chief–Appellate Div., James R. Wilson, Appellate Counsel.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, and James R. Gilmore, Asst. Dist. Attys., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

This is an appeal from an order of the Superior Court affirming a judgment of sentence entered against petitioner in the Court of Common Pleas of Allegheny County, Criminal Division, following his conviction for one count of Burglary, 18 Pa.C.S. § 3502.[1] The issues presented concern whether the police illegally seized Appellant and certain items of evidence in his possession after initiating a valid investigatory stop. If we determine that an illegal seizure occurred, we must also find that the Superior Court erred in holding Appellant's trial counsel was not ineffective for failing to file a motion to suppress the fruits of the illegal detention. If, however, we find that Appellant was not illegally detained, we must affirm the Superior Court's conclusion that Appellant's trial counsel was not ineffective for failing to challenge the detention. Finally, if we conclude that the police illegally removed evidence from Appellant's vehicle, we must reverse the holding of the Superior Court and remand the case for a new trial. After reviewing the record, the arguments of counsel, and the relevant case law we affirm the holding of the Superior Court.

The facts giving rise to this case are as follows: On September 30, 1991, at approximately 2:00 a.m., Officer Thomas Neibel of the McCandless Police received a radio dispatch stating that the Pine Township Police had received a burglar alarm call at a business, Perma Ceram, on Route 19 in their township. Route 19 is a major four lane highway that runs, in part, from the south of the City of Pittsburgh, to the north, through several municipalities including McCandless and Pine Townships.

1. Appellant was initially charged with two additional counts of burglary as well as one count of Receiving Stolen Property (18 Pa.C.S. § 3925) and one count of Criminal Conspiracy (18 Pa.C.S. § 903). At the close of the Commonwealth's evidence, a demurrer was granted to the Conspiracy charge while appellant was acquitted of the remaining charges.

Upon hearing the dispatch and a subsequent request for assistance, Officer Neibel proceeded north on route 19 toward the Pine Township line. While en route he was advised that two actors, who were described as white or possibly "Mexican", were leaving the scene of the burglary. As Neibel closed to within a half mile of the burglary scene, he spotted a vehicle traveling south which fit the radioed description of the vehicle seen leaving the area of the burglary. In addition, the vehicle's location corresponded to the position where a car would be found had it left the burglary site at the time of the broadcast. Officer Neibel then made a U-turn and proceeded to follow the vehicle for three-quarters of a mile before pulling it over.

After two other McCandless police officers arrived on the scene, Officer Neibel approached the vehicle and ordered Appellant, who was driving, and his companion, both of whom are African–American, to exit the vehicle. The officer then patted down the two men and searched the passenger compartment of the car for weapons. In the course of his search of the passenger compartment, Neibel noticed a screwdriver on the floorboard of the vehicle behind the driver's seat.

Following the search of the vehicle, the suspects were ordered to remain seated in their vehicle while Officer Neibel checked Appellant's licensure and the burglary information. After reviewing Appellant's operator's information, Neibel issued a citation to Appellant for driving without a license.

During this time, Officer Vierling of the Pine Township Police had proceeded to the scene of the burglary, noted the point of entry and found pry marks on the door. Vierling then contacted the witness who had made the burglary call and took him to the scene of the stop for identification.

Vierling and the witness arrived at the scene of the detention approximately ten to fifteen minutes after the initial stop of Appellant's vehicle, and shortly after Officer Neibel had finished issuing a citation to Appellant. Upon their arrival, the witness stated that he was eighty-five percent sure that Appellant's vehicle was the one he had seen leaving the area of

the burglary. After speaking with Officer Neibel, Vierling approached Appellant's vehicle and removed the screwdriver Neibel had previously observed, because he felt the tool was capable of making the sort of pry marks visible on the door of Perma Ceram. Appellant was removed from his vehicle and placed in the backseat of one of the McCandless police cars so that he could be observed by the witness, who was still seated in Vierling's patrol car. The witness, however, was unable to identify Appellant positively.

While Appellant was seated in the back of the McCandless police vehicle, Vierling approached and asked if he could take the screwdriver and one of Appellant's tennis shoes back to the crime scene to compare them with the pry marks on the door and any foot prints, respectively. Appellant agreed, and Vierling departed for the crime scene. By this time, approximately half an hour had passed since the initial stop.

Upon returning to the crime scene, Vierling noted that the pry marks on the door of Perma Ceram appeared to be the same width as the screwdriver he had seized from Appellant's car. Vierling, however, was unable to find any footprints to compare with Appellant's shoe. After approximately fifteen to twenty minutes, he returned to the scene of the stop, where Appellant was still waiting with the McCandless police.

After returning Appellant's shoe, Officer Vierling requested that Appellant accompany him to the station. Appellant and his companion then followed the officers to the police station where he was given *Miranda* warnings, agreed to make a statement, and signed a consent to search his vehicle. Appellant denied any involvement in the burglary, and claimed that he was in the area after having gotten lost leaving his sister's house. An inventory search of the car revealed two bottles of wine, one with an Asti Spumante label, and an envelope containing several sheets of postage stamps in the rear passenger compartment. Appellant was permitted to leave after the search.

At approximately 8:00 a.m. that same morning, the Pine Township police received two additional burglary reports from

the Auto Service Mall and GME Systems, which were located approximately one quarter mile from Perma Ceram on Route 19. An investigation revealed that two bottles of wine, one of them Asti Spumante, and several sheets of postage stamps had been stolen from GME Systems.

The police then obtained an arrest warrant for Appellant based on the inventory search of his vehicle. The police subsequently served the warrant at the home of Appellant's girlfriend in Wilkinsburg, PA. As they placed Appellant under arrest, the officers asked Appellant where the tennis shoes were that he had worn when he was stopped by the police earlier that morning. Appellant then directed his girl-friend to retrieve the shoes from an upstairs bedroom, and she gave them to the police. Tests subsequently revealed that soles of these shoes matched footprints found at the Auto Service Mall. In addition, laboratory analysis also revealed that the screwdriver found in Appellant's vehicle on the morning of September 30, 1991, matched pry marks found at each of the burglary locations.

Appellant was charged with three counts of burglary and one count of criminal conspiracy. Prior to trial, Appellant made an oral motion to suppress the evidence against him on the grounds that the initial stop had not been supported by reasonable suspicion, and that he had not consented to the seizure of his shoes at the time of arrest. This motion was denied and the case proceeded to a jury trial. At the close of the evidence, the trial court granted Appellant's demurrer to the conspiracy count, and the jury subsequently found Appellant guilty of one count of burglary (relating to the burglary of the Auto Service Mall), and not guilty of the remaining counts.

Post-trial motions were denied and Appellant was sentenced to a term of forty to eighty months incarceration. On appeal, the Superior Court affirmed the judgment of sentence, and this Court granted allocatur.

Appellant claims he is entitled to a new trial on the basis of counsel's failure to argue for the suppression of evidence on the grounds that (1) the continued detention after the initial

stop of his vehicle was unsupported by reasonable suspicion, and (2) that the lengthy roadside stop to which he was subjected amounted to a custodial detention unsupported by probable cause.[2]

■ The standard under which a claim of ineffective assistance of counsel is to be assessed is well-established and was recently set forth by this court in *Commonwealth v. Robert Douglas*, 537 Pa. 588, 645 A.2d 226 (1994). First, a defendant must show his claim to be of arguable merit. In the event this threshold requirement is satisfied, the defendant must next establish that defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question. Finally, the defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. In other words, that the defendant suffered actual prejudice from the act or omission. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *See also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). With this standard in mind, we now turn to the merits of Appellant's claims.

■ Initially we note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no

2. Appellant also raises these issues in the context of a direct challenge to the admission of evidence obtained as a result of his detention. However, because Appellant failed to raise these issues in a pre-trial suppression motion they are waived pursuant to Pa.R.Cr.P. 323(b) and (d). Appellant's claims, therefore, can only be premised in terms of ineffectiveness of counsel.

We also note that we are forced to paraphrase these issues because they are not expressly delineated in appellant's brief. Rather, they are lumped together in a single sub-section which merely makes the vague assertion that the evidence linking appellant to the crime was obtained in violation of his fourth amendment rights. We feel it necessary to caution counsel that such a lack of precision is disapproved, as it hampers our efforts to grasp the exact issues counsel wishes us to address.

official compulsion to stop or to respond. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Florida v. Bostick*, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Finally, an arrest or "custodial detention"[3] must be supported by probable cause. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992).

■ There is no doubt that the initial stop by Officer Neibel constituted an investigative detention and was supported by a reasonable suspicion that Appellant was engaged in criminal activity. Appellant, however, contends that trial counsel was ineffective for failing to allege that his confinement after this initial stop was not supported by reasonable suspicion and, thus, constituted an illegal investigative detention. Specifically, Appellant argues that any suspicions the officer possessed concerning the identity of the burglars should have been allayed when he realized that Appellant and his companion were African–American and not white or "Mexican". Hence, he contends that his continued detention after the initial stop was unsupported by a reasonable suspicion. We disagree.

■ As previously noted, Officer Neibel's stop of Appellant was based on the following articulable facts which created a reasonable suspicion that Appellant was engaged in criminal activity: (1) Appellant's vehicle was the only vehicle on the

3. We note that the term "custodial detention" has generally been used by the United States Supreme Court to describe incidents in which the police do not verbally inform a suspect that he is under arrest, but rather, undertake actions which result in the conditions of the detention becoming so coercive as to amount to the functional equivalent of a formal arrest. *See Dunaway v. New York, supra.* We find this distinction, however, to be purely semantic since in either case the seizure of the suspect must be supported by probable cause.

roadway near the burglary scene at that hour; (2) the car was in the area a vehicle would have been if it left the area of the burglary when the call was broadcasted; and (3) the car matched the description of the one seen at the crime. We are unable to conclude that the existence of a single fact contradictory to the police radio broadcast required an officer to ignore these other incriminating factors. Thus, Appellant's first claim of ineffectiveness lacks arguable merit since Officer Neibel's continued detention of Appellant was supported by reasonable suspicion.

Appellant next argues that even if his continued confinement was supported by reasonable suspicion, trial counsel was ineffective for failing to argue for suppression of the fruits of that confinement on the ground that the prolonged detention of Appellant amounted to a custodial restraint unsupported by probable cause. The Commonwealth, in turn, argues that Officer Neibel's investigative detention of Appellant did not mature into a custodial detention because under the holding of the United States Supreme Court in *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the officer was justified in detaining Appellant for the period of time necessary for the police to pursue a means of investigation likely to confirm or dispel their suspicions quickly.

*Sharpe*, dealt with a defendant's challenge to his convictions on federal drug charges. These convictions followed an incident in which an Agent of the Drug Enforcement Agency attempted to stop the defendant's vehicle and a pickup truck which were traveling in tandem. After observing the vehicles, the DEA agent suspected that the pickup truck was loaded with illegal drugs. When he attempted to stop the vehicles with the assistance of a state highway patrol officer, the vehicles took evasive maneuvers which resulted in their being stopped approximately a half mile apart. This separation resulted in the defendant being subjected to an investigative detention for approximately twenty minutes while the agent attempted to determine if the pickup truck was in fact carrying contraband. After the pickup truck was found to be carrying marijuana, the defendant was arrested.

■ On appeal, Sharpe challenged his conviction on the ground that because of its length, the investigative detention matured into a custodial detention which was not supported by probable cause. The United States Supreme Court subsequently rejected this argument. The Court observed that while "the brevity of the invasion of an individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion", "its cases imposed no rigid time limits on *Terry* stops." Thus, the Court held that key factor to be examined in determining if a detention lasts too long to be justified as an investigative stop, is whether "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." The Court then applied this standard to the case before it and concluded that because the DEA agent had pursued his investigation in a diligent and reasonable manner, the twenty minute restraint of the defendant had not exceeded the bounds of a permissible investigative detention.

■ In applying *Sharpe* to the instant case, we find that Officer Neibel's detention of Appellant until the arrival of Officer Vierling amounted to no more than an investigative detention supported by reasonable suspicion. Appellant was detained for approximately ten to fifteen minutes in order to allow Officer Vierling to view the crime scene and to transport the witness to the scene of the stop for an on-scene identification. These actions were reasonable attempts to confirm or dispel the officer's suspicions and were diligently pursued. Also, most of this time was used for the legitimate purpose of issuing Appellant a citation for driving without a license. Thus, Officer Neibel's detention of Appellant until the arrival of Officer Vierling did not mature into a custodial detention, but rather, remained an investigative detention supported by reasonable suspicion.

■ Nor can the events which followed Appellant's consent to the use of his shoe be said to have created a custodial

detention because they were driven entirely by Appellant's agreement and are not properly attributable to the stop itself.[4] Indeed, nothing in the record indicates that Appellant would have been barred from leaving if he had failed to further cooperate with the police investigation.

■ Appellant's final claim asserts that he is entitled to relief because the trial court erred in upholding the removal of the screwdriver from the backseat of Appellant's car under the plain view doctrine.[5] In reviewing such a challenge to the denial of a motion to suppress we will "consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole. If there is support on the record we are bound by the facts as found by the suppression court." *Commonwealth v. O'Shea*, 523 Pa. 384, 395, 567 A.2d 1023, 1028 (1989). Furthermore, "we may reverse that court only if the legal conclusions drawn from these facts are erroneous." *Id.*

■ Under the plain view doctrine, the warrantless seizure of a piece of evidence which is in plain view is permissible when two criteria are met. First, the evidence must be seen from a lawful vantage point. Second, it must be immediately apparent to the viewer that the object observed is incriminating evidence. In other words, the observing officer must have probable cause to believe the evidence in question is contraband or incriminating evidence. *See Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990);

4. We recognize that if Appellant's consent had not been voluntarily given the subsequent events would be attributable to the investigatory stop. However, we are unable to make such a determination with the record now before us and Appellant has not asserted that the case should be remanded for a hearing to further explore this issue. Thus, Appellant's ability to request such relief has been waived under Pa. R.A.P. 123(a).

5. We note that while Appellant did not raise this issue in his initial, oral motion to suppress; the issue was raised in an oral motion to suppress which was made by trial counsel in the course of Appellant's trial. *See*, (Notes of Testimony, 8/6, 10, 11/ 91, at 165). Thus, we are able to address this issue in the context of a direct challenge to the trial court's denial of the suppression motion.

*Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).[6]

 Appellant now argues that Officer Vierling's seizure of the screwdriver was not supported by probable cause and thus, fails the second prong of this standard. Our standard for evaluating whether probable cause exists is the "totality of the circumstances" test set forth in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Commonwealth v. Rodriguez,* 526 Pa. 268, 585 A.2d 988 (1991); *Commonwealth v. Baker,* 513 Pa. 23, 518 A.2d 802 (1986); *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). In applying this test in the context of the plain view doctrine, we must determine whether the facts and circumstances existing at the time of the seizure would have led a person of reasonable caution to believe that the evidence in question was incriminating in nature. In applying this standard to the instant case, we find that Officer Vierling did have probable cause to believe the screwdriver had been used in the commission of a crime. Not only did it appear to be capable of making the pry marks the officer observed, but it was found in the backseat of a vehicle which a witness was eighty-five percent sure was the one he had seen at the crime scene and which had been found in a location corresponding to the area a car would have been in if it had left the crime scene at the time of the radio broadcast indicating the perpetrators were leaving the scene. We conclude that these factors when taken as a whole would lead a person of reasonable caution to believe that the screwdriver had been used in the commission of a crime. Thus, the seizure of this evidence was permissible under the plain view doctrine.

Accordingly, the order of the Superior Court, affirming the judgment of sentence against Appellant is affirmed.

6. Prior to *Horton,* cases dealing with the plain view doctrine had also required that the discovery of evidence be inadvertent in order for the plain view doctrine to serve as a basis for the warrantless seizure evidence. *Horton,* however, clearly discarded this prong of the plain view test.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.