J. S17001/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JEROME RAYMOND BANKS, | : | |
| | : | |
| Appellant | : | No. 895 WDA 2013 |

Appeal from the Judgment of Sentence April 24, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division No(s).: CP-02-CR-0002813-2013
CP-02-CR-0011408-2012

BEFORE: GANTMAN, P.J., SHOGAN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 02, 2015**

Appellant, Jerome Raymond Banks, appeals from the judgment of

sentence entered in the Allegheny County Court of Common Pleas following

a bench trial and convictions for possessing a firearm with an altered

manufacturer's number,[1] receiving stolen property,[2] firearms not to be

carried without a license,[3] and possession of firearm prohibited.[4] Appellant

challenges whether the arresting officer possessed the requisite reasonable

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6110.2(a).

[2] 18 Pa.C.S. § 3925(a).

[3] 18 Pa.C.S. § 6106(a)(1).

[4] 18 Pa.C.S. § 6105(a)(1).

J. S17001/15

suspicion to conduct a pat-down.  We reluctantly conclude Appellant is due

no relief.

We adopt the facts set forth by the trial court.[5]  **See** Trial Ct. Op.,

5/6/14, at 1-4.  Appellant timely appealed and timely filed a court-ordered

Pa.R.A.P. 1925(b) statement.  Appellant raises the following issues:

> Were Appellant's Pa. Const. art. I § 8 and U.S. Const.
> amend. IV & XIV constitutional rights violated when the
> police, acting without a warrant, detained him for
> investigation as he walked along a public street without
> the reasonable suspicion required for such a detention
> (i.e., objectively reasonable suspicion that he was engaged
> in, had been engaged in, or was about to engage in
> criminal activity)?
>
> Were Appellant's Pa. Const. art. I § 8 and U.S. Const.
> amend. IV & XIV constitutional rights violated when the
> police frisked his person for [a] weapon without reasonable
> suspicion required for a protective frisk (i.e., objectively
> reasonable suspicion that he was both armed and
> presently dangerous at the time of the search or frisk of
> his person)?
>
> In view of the proper answers to Question Nos. 1 and 2,
> should not the trial court have granted Appellant's pretrial
> motion seeking to suppress the firearm seized from his
> person by the police, and should not this Court vacate
> Appellant's convictions and sentences, and remand
> Appellant's case for a retrial on Allegheny County Criminal
> Complaint Numbers 2012-11408 and 2013-02813 (with

---

[5] We acknowledge the holding of **In re L.J.**, 79 A.3d 1073 (Pa. 2013), that after October 30, 2013, the scope of review for a suppression issue is limited to the record available to the suppression court.  **Id.** at 1085, 1089 (stating holding applies to "all litigation commenced Commonwealth-wide after the filing of this decision").  Because the instant criminal complaint was filed prior to October 30, 2013, **In re L.J.** does not apply.

the firearm seized from his person barred from admission into evidence)?

Appellant's Brief at 4.[6]

We summarize Appellant's arguments for all of his issues together. Appellant argues that the police lacked a reasonable suspicion that he was engaged in criminal activity or was armed. He reasons that walking in a high crime area while wearing a hooded, zipped sweatshirt in August while carrying a heavy, unknown object in his waistband did not justify the search and seizure. Appellant acknowledges that he reported to the police that he was robbed in the area five days earlier. He further concedes that he was uncooperative when he was questioned earlier by a police officer about that robbery, who, coincidentally, was also the instant arresting officer. We are constrained to hold Appellant is not due relief.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Where the prosecution prevailed in the suppression court, we may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are

---

[6] Appellant admits his brief exceeds the 14,000 word limit set forth in Pa.R.A.P. 2135. *See* Appellant's Counsel's Cert. of Compliance with Word Count Restrictions. We decline to quash or dismiss the appeal, however. *See generally* Pa.R.A.P. 2101; *Commonwealth v. Spuck*, 86 A.3d 870 (Pa. Super. 2014).

bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*In re J.E.*, 937 A.2d 421, 425 (Pa. 2007) (citations omitted).  In evaluating the legal conclusion drawn by the suppression court, this Court may also consider uncontradicted testimony from the suppression hearing not included in the suppression court's findings of fact.  *Commonwealth v. Mendenhall*, 715 A.2d 1117, 1119 n.1 (Pa. 1998).

> Initially we note that Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police.  The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond.  The second, an "investigative detention[,]" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest.  Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995) (citations and footnote omitted).  An investigative detention is also known as a "*Terry* stop." *Commonwealth v. Chase*, 960 A.2d 108, 117 (Pa. 2008).

The Pennsylvania Supreme Court adopted the objective *Jones/Mendenhall*[7] standard "in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter

---

[7] *United States v. Mendenhall*, 446 U.S. 544 (1980); *Commonwealth v. Jones*, 378 A.2d 835, 839 (Pa. 1977).

between citizen and police officer." ***Commonwealth v. Matos***, 672 A.2d 769, 774 (Pa. 1996).

> In [***Commonwealth v. Hicks***, 253 A.2d 276 (Pa. 1969)], this Court adopted the United States Supreme Court's decision in ***Terry v. Ohio***, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), which permits a police officer to effect a precautionary seizure where the police have a reasonable suspicion that criminal activity is afoot. ***Terry***, and by analogy ***Hicks***, recognized that there are some instances in which an individual may not be arrested, but will still be considered to be "seized." In ***Jones***, this Court adopted an objective standard for determining what amount of force constitutes the initiation of a ***Terry*** stop: whether a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes. This case, which preceded the United States Supreme Court's decision in . . . ***Mendenhall***, . . . was a precursor to the so-called "***Mendenhall***" test posited by the United States Supreme Court: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."
>
> The ***Jones***/***Mendenhall*** standard has since been consistently followed in Pennsylvania in determining whether the conduct of the police amounts to a seizure or whether there is simply a mere encounter between citizen and police officer.

***Id.*** at 773-74 (punctuation and some citations omitted).

The Pennsylvania Supreme Court provided further guidance in applying this "totality of the circumstances" test:

> In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach,

> with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 757 A.2d 884, 890 (Pa. 2000) (footnotes and some citations omitted). Factors examined in this totality-of-the-circumstances approach include "all circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements." *Mendenhall*, 715 A.2d at 1119. This Court also set forth a non-exclusive list of factors:

> [T]he number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked. Otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.

*Commonwealth v. Collins*, 950 A.2d 1041, 1047 n.6 (Pa. Super. 2008) (*en banc*) (citation omitted).

In sum, the question of "whether the police needed some level of requisite cause **at the time** they **initially** approached" the defendant is "governed by the type of encounter that the **police initiated** when they approached" the defendant. *In re D.M.*, 781 A.2d 1161, 1164 (Pa. 2001) (emphases added). The critical inquiry is what type of encounter the police initiated at the time they initially approached the defendant. *See id.* After identifying the type of encounter—*e.g.*, mere encounter, investigative

detention, or custodial detention—this Court must then determine whether the police had the requisite cause for that encounter, respectively, *e.g.*, no suspicion required, reasonable suspicion that criminal activity was afoot, or probable cause for an arrest. **See Ellis**, 662 A.2d at 1047; **Jones**, 378 A.2d at 839 n.4.

In **Commonwealth v. Carter**, 105 A.3d 765 (Pa. Super. 2014) (*en banc*), our Superior Court held the police had reasonable suspicion to stop and frisk the defendant based on the following:

> On November 9, 2011, at approximately 9:00 p.m., Officer Matthew Blaszczyk of the Philadelphia Police Department was patrolling near 700 East Madison Avenue in Philadelphia, at the corner of Madison Avenue and G Street. Officer Blaszczyk testified that this is a known drug corner and he personally has made multiple gun and drug arrests at this corner. At said time, Officer Blaszczyk and his partner, Officer White, were driving northbound on G Street when they observed [the defendant] standing on the northeast corner of the intersection. Officer Blaszczyk "immediately observed a bulge in [the defendant's] left coat pocket." Officer Blaszczyk believed that it was a heavy object because of "the way it weighed the jacket down and the way it protruded." As Officers Blaszczyk and White drove northbound by [the defendant], Officer Blaszczyk noted that, "[the defendant] looked in [their] direction and began to walk south." The officers circled around the block and approached the intersection from a different direction. Upon returning to the intersection, Officer Blaszczyk observed that [the defendant] was back on the same corner, with the same bulge in his coat. Officer Blaszczyk noted that he and Officer White did this multiple times.
>
> Each time we came down the street, it was a few times, maybe three or four, [the defendant] would look in our direction and walk the opposite way whichever way we were coming from.

> And the way he turned his body was so that that bulge, you know, we could see it initially. And then he'd turn. So he wasn't in our view.
>
> The officers got out of their vehicle and approached [the defendant], and again [the defendant] turned his body away from the officers so they could not see the bulge in his coat. Officer Blaszczyk further testified that based on the size and shape of the bulge, the way it weighed [the defendant's] coat down, and the way it swung, he believed the bulge to be a firearm. Officers Blaszczyk and White stopped [the defendant] and patted him down. During the pat-down, Officer Blaszczyk noticed upon feeling the bulge, that he could "immediately feel the shape of a firearm." Officer Blaszczyk recovered from [the defendant's] person "a 22–caliber Walther handgun, a Walther P–22 model."

*Id.* at 766-67 (footnote and citations omitted).

The *en banc* Court held that the search and seizure was justified:

> [T]he Commonwealth, through Officer Blaszczyk, established that [the defendant] was in a high-crime area, at night, with a weighted and angled bulge in his coat pocket. Furthermore, [the defendant] was alerted to the officers' presence and intentionally turned his body away from them, at least three times, to conceal the bulge. The officers also observed [the defendant] walking away from the known drug corner whenever the officer[s] passed by it. In our view, the Commonwealth sufficiently showed that Officer Blaszczyk had the reasonable suspicion to first seize [the defendant] as well as conduct the limited **Terry** pat-down, as the entire basis for Officer Blaszczyk's seizure before the pat-down was that [the defendant] was armed and dangerous.

*Id.* at 774-75 (footnote and citations omitted). The **Carter** Court emphasized the totality of the circumstances justified the seizure. *Id.* at 775. The *en banc* majority also noted that "the Commonwealth would not be penalized if the officer had been wrong because **Terry**, by its very

nature, 'accepts the risk that officers may stop innocent people.' ***Illinois v. Wardlow***, 528 U.S. 119, 126, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)." ***Id.*** at 769 n.4.

Instantly, in a high-crime area around 1:30 p.m. on August 20, 2012, when the temperature was in the mid-70s, two officers were in a vehicle.[8] N.T. Suppression Hr'g, 2/21/13, at 6. The police saw Appellant wearing a zipped, hooded sweatshirt with his right hand in the front pocket of the sweatshirt or in front of his waistband holding something heavy. ***Id.*** at 6, 8-10. The police believed Appellant was armed. ***Id.*** at 6. The police pulled up next to Appellant; the plainclothes officer opened the vehicle's door, announced "Pittsburgh Police," displayed his badge, exited the vehicle, and approached Appellant. ***Id.*** at 9-10. The following transpired:

> [District Attorney]. Now, as you passed [Appellant], what did you do, if anything?
>
> [Officer]. We turned our vehicle around and pulled up beside him. I opened my door and announced "Pittsburgh Police" and displayed my badge and approached him. He was still continuing to walk outbound. I got out of my vehicle and approached him.
>
> Q. Then what did you do?
>
> A. I said, "Pittsburgh Police. I need to talk to you." [Appellant] didn't acknowledge I was there, although we were in close proximity. He could hear me and did acknowledge my presence. I closed the gap between the

---

[8] One officer was in plain clothes; the record does not establish the clothing of the other officer and whether the vehicle was marked or unmarked.

> two of us. At that point he moved his hand out of his pockets.
>
> I said, "Do you have a weapon?"
>
> Again, he refused to answer me. At that point I believed he was armed. Did a pat down of his front waistband where I observed his hands. Immediately felt the handle of a pistol.

*Id.* at 9-10. We note the officer previously testified about his belief that Appellant was armed when they first saw him earlier. *Id.* at 6.

Instantly, when the police initially approached Appellant, asked to speak with him, and inquired whether he was armed, the interaction was a mere encounter or request for information. *See Ellis*, 662 A.2d at 1047; *see also In re D.M.*, 781 A.2d at 1164. There was no official compulsion to stop or to respond. *See Ellis*, 662 A.2d at 1047.[9] The mere encounter, however, transformed into an investigative detention when the police conducted a *Terry* pat down. *See Matos*, 672 A.2d at 773-74; *Chase*, 960 A.2d at 117. Having identified the type of encounter, we next ascertain whether the police had reasonable suspicion of criminal activity. *See Ellis*, 662 A.2d at 1047; *Jones*, 378 A.2d at 839 n.4.

---

[9] We acknowledge, "When a police officer initiates an encounter, an individual as a practical matter **never** feels free to leave. The police officer has a weapon. The police officer's testimony is almost always believed in court. No responsible person would walk away from an encounter with a police officer." *Commonwealth v. Lyles*, 54 A.3d 76, 84 (Pa. Super. 2012) (Strassburger, J., concurring), *aff'd*, 97 A.3d 298 (Pa. 2014).

Similar to the defendant in **Carter** who was standing on a street corner in a high crime area with a bulge in the left front pocket, Appellant was in a high crime area with his right hand in his sweatshirt or waistband holding something heavy. **Cf. Carter**, 105 A.3d at 766. The instant police, like the police in **Carter**, also believed Appellant had a firearm. **Cf. id.** at 767. Appellant, analogous to the **Carter** defendant, walked away from the police. **Cf. id.** at 767. The police—identical to the police in **Carter**—patted Appellant down and recovered a firearm. **Cf. id.** Given the instant facts are comparable to the facts in **Carter**, we are constrained to hold that the Commonwealth, given the totality of the circumstances, established reasonable suspicion to conduct the **Terry** pat down. **See Strickler**, 757 A.2d at 890; **Mendenhall**, 715 A.2d at 119; **cf. Carter**, 105 A.3d at 774-75. Because the record supports the factual findings of the trial court and the legal conclusions drawn therefrom are correct, we discern no basis for relief and affirm the judgment of sentence. **See In re J.E.**, 937 A.2d at 425.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

J. S17001/15

Date: <u>6/2/2015</u>