J. S58036/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
                                      :             PENNSYLVANIA
                  Appellant       :
                                        :
               v.                   :            No. 606 WDA 2018
                                        :
RYAN REX GRAY                      :

Appeal from the Order, March 23, 2018,
in the Court of Common Pleas of Beaver County
Criminal Division at No. CP-04-CR-0001064-2017

BEFORE: OLSON, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:       **FILED NOVEMBER 1, 2018**

The Commonwealth appeals from the March 23, 2018 order entered in the Court of Common Pleas of Beaver County that granted the omnibus pretrial motion to suppress physical evidence filed by appellee, Ryan Rex Gray. After careful review, we affirm.

The suppression court set forth the following:

> By Criminal Information dated July 24, 2017[, appellee] was charged with three counts of DUI,[Footnote 1] two counts of possession of drug paraphernalia (a silver grinder and a marijuana pipe),[Footnote 2] and one count of Driving Under Suspension.[Footnote 3] [Appellee] filed a Motion to Suppress Evidence on January 2, 2018. A hearing upon this motion was held on February 6, 2017 at which time the Commonwealth presented testimony from Trooper [Trask Alexander] of the Pennsylvania State Police, Beaver County Barracks.

[Footnote 1] Count 1 charged under 75 Pa.C.S.A. § 3802(d)(1); Count 2 charged under 75 Pa.C.S.A. § 3802(d)(1)(iii); Count 3 charged under 75 Pa.C.S.A. § 3802(d)(2). All counts reflect that that [sic] this is his fourth DUI offense in ten years.

[Footnote 2] Both counts (Counts 4 and 5 in the information) charged under 35 P.S. § 780-113(a)(32).

[Footnote 3] Count 6 in the information charged under 75 Pa.C.S.A. § 1543(b)(1).

. . . .

On February 25, 2017, at approximately 9:52 p.m., the State Police received a tip from a concerned neighbor (hereinafter "neighbor") of two unknown trucks[Footnote 4] parked in the driveway of an abandoned residence that the "neighbor" claimed had been the subject of burglary attempts in the past. The "neighbor" provided his identity to the police and informed them that he saw people walking around with flashlights.

[Footnote 4] No other identifying information was provided regarding the trucks, such as make, model, year, plate, color, etc.

Trp. [Alexander] traveled towards the scene—a trip which took approximately 20 minutes. As Trp. [Alexander] was nearing the locality of Hookstown Boro., a second call was received from the same "neighbor" who relayed that the trucks were leaving the property and heading east on Georgetown Rd., towards Hookstown.

Trp. [Alexander] decided to park his cruiser by the mini-mart near the intersection of Pine and Main St. in Hookstown Boro., to wait for the trucks to appear.

> Trp. [Alexander] testified at the suppression hearing that it was a low traffic area at that time, and "not much was going on."
>
> Within minutes of parking his cruiser, Trp. [Alexander] observed two trucks pass by his location. Trp. [Alexander] began following the trucks, both of which turned right onto Main St. and proceeded towards Mill Creek Ballpark where Trp. [Alexander] initiated a traffic stop of [appellee], who was driving a Silver Ford F-150. At the suppression hearing, Trp. [Alexander] testified that he did not observe any traffic infractions while following [appellee's] vehicle and that his decision to conduct a traffic stop was solely based on suspicion that the occupants of the vehicles were involved in a suspected burglary—a suspicion based solely on the call from the "neighbor[."]
>
> Upon approaching [appellee's] vehicle, Trp. [Alexander] removed [appellee] from the vehicle for officer safety purposes. During this time, Trp. [Alexander] allegedly detected the odor of marijuana emanating from the vehicle. Upon questioning [appellee], [appellee] purportedly stated that he possessed drug paraphernalia inside the vehicle, and an ensuing search revealed the presence of a silver metal grinder and a blue-tipped pipe.

Suppression court opinion, 3/26/18 at 1-3 (footnote 5 omitted).

The record reflects that following entry of the order granting appellee's motion to suppress, the Commonwealth filed a timely notice of appeal to this court. Within its notice of appeal, the Commonwealth certified that the suppression court's order would terminate or substantially handicap appellee's prosecution. *See* Pa.R.A.P. 311(d) (permitting Commonwealth appeal from an interlocutory order if it certifies that the order will terminate

or substantially handicap the prosecution). Thereafter, the suppression court filed its Rule 1925(a) opinion wherein it stated that its reasons for entering the order granting appellee's motion to suppress are fully set forth in its March 26, 2018 opinion.

The Commonwealth raises the following issue for our review:[1]

> Whether the suppression court erred in granting appellee's motion to suppress evidence stemming from a traffic stop on July 24, 2017, where Trooper Alexander of the Pennsylvania State Police to [sic] stopped appellee's vehicle because of suspicion of a suspected burglary?

Commonwealth's brief at 6 (full capitalization omitted).

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain **_de novo_** review over the suppression court's legal conclusions.

---

[1] We note that by correspondence dated August 20, 2018, appellee informed this court that he would not file a brief in this case because the suppression court's March 26, 2018 opinion fully addressed his position.

***Commonwealth v. Korn***, 139 A.3d 249, 252-253 (Pa.Super. 2016) (internal citations and quotation marks omitted).

> Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and the police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Ellis***, 662 A.2d 1043, 1047 (Pa. 1995) (citations omitted).

Here, the Commonwealth contends that Trooper Alexander had reasonable suspicion to stop appellee's vehicle for purposes of an investigative detention based on the information he received that was called in to police by an identified caller concerning a potential burglary in progress.

"The appellate courts have mandated that law enforcement officers, prior to subjecting a citizen to an investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." ***Commonwealth v. Barber***, 889 A.2d 587, 593 (Pa.Super. 2005) (citation omitted). "Reasonable suspicion is a less demanding standard than probable cause because it can be established by

information that is different in quantity and quality than that required for probable cause; it can arise from information that is less reliable than that required to show probable cause." ***Commonwealth v. Emeigh***, 905 A.2d 995, 998 (Pa.Super. 2006) (citation omitted).

> To meet the standard of reasonable suspicion, "the officer must point to specific and articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. In ascertaining the existence of reasonable suspicion, we must look to the totality of the circumstances to determine whether the officer had reasonable suspicion that criminal activity was afoot." ***Barber***, ***supra*** at 593 (citations and quotations omitted). Further, "police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." ***Id.***

***Commonwealth v. Smith***, 904 A.2d 30, 35-36 (Pa.Super. 2006).

> When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

***Barber***, 889 A.2d at 593-594 (citation omitted). "A tip that comes from an informer known to the police may carry enough reliability to allow for an investigative stop, even though the same tip from an anonymous source would not." ***Emeigh***, 905 A.2d at 998 (citation omitted).

Here, in granting appellee's motion to suppress, the trial court concluded that:

> the information provided [to Trooper Alexander] was based on a previously unknown "neighbor's" supposition. There was no description or identification of the individual(s) who were the subject of his concern, and only an extremely vague description of vehicle(s) he claimed were in an area near an abandoned house. While he expressed a concern about past burglaries there was no indication that the "individuals" or "trucks" involved were not authorized to be on the property.
>
> While [Trooper Alexander] was acting in good faith, his action was in response to information that was based on a vaguely described general hunch that did not justify intrusion on [appellee's] constitutionally guaranteed rights.

Trial court opinion, 3/26/18 at 9.

Our review of the record demonstrates that the record supports the suppression court's findings of fact and that the suppression court properly applied the law to the facts to conclude that the information supplied by the caller was not specific enough to support reasonable suspicion of criminal activity.

Order affirmed.

J. S58036/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/1/2018