J-S04001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIL M. COOK | : | |
| | : | |
| Appellant | : | No. 325 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 15, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002752-2023

BEFORE:  OLSON, J., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                **FILED FEBRUARY 5, 2025**

Appellant, Jamil M. Cook, appeals from the judgment of sentence entered on December 15, 2023.  We affirm.

Appellant was arrested and charged with, among other things, persons not to possess firearms.  **See** 18 Pa.C.S.A. § 6105(a)(1).  Prior to trial, Appellant filed a suppression motion where he claimed that the physical evidence against him must be suppressed, as it was the product of an illegal seizure of his person.  **See** Suppression Motion, 4/27/23, at 1-2.  On September 12, 2023, the trial court held a hearing on Appellant's motion.  The trial court ably summarized the evidence produced during this hearing:

> During [A]ppellant's suppression hearing, the Commonwealth presented the testimony of Philadelphia Police Officers Grace Oyana and Pedro Ramos and Detective Adam O'Donnell.  It also

_____

[*] Retired Senior Judge assigned to the Superior Court.

introduced body-cam footage of the alleged incident. The relevant facts are as follows[.]

> On March 8, 2023, Officers Oyana and Ramos were on routine patrol in the 25th Police District. At around 5:45 p.m., the officers observed three males, one of whom was [A]ppellant, standing outside of a gas station at 101 West Lehigh Avenue. According to the officers, that particular location is considered a high crime area, known for illegal narcotics activity, firearms offenses and a recent shooting.
>
> The officers pulled their marked patrol car into the gas station to investigate. They did not activate their lights or siren, nor did they give any verbal commands or make a show of force to any of the three men. Nevertheless, [A]ppellant started to walk away as the officers approached. Officer Oyana exited the patrol car and walked in the same direction as [A]ppellant while Officer Ramos approached the other men who remained in front of the gas station. Officer Oyana testified that [A]ppellant walked between two cars and then started to run. Both officers pursued [A]ppellant as he fled on foot. During the brief foot pursuit, [A]ppellant reached into his waistband and discarded a firearm. Officer Oyana eventually caught and arrested [A]ppellant. While Officer Oyana was placing [A]ppellant in handcuffs, Officer Ramos recovered the gun [A]ppellant discarded.

Trial Court Opinion, 5/24/24, at 2 (citations omitted).

The trial court denied Appellant's suppression motion and, on December 15, 2023, Appellant pleaded *nolo contendere* to persons not to possess firearms. **See** 18 Pa.C.S.A. § 6105(a)(1). That day, the trial court sentenced Appellant to serve 11 ½ to 23 months, with immediate parole to house arrest, and to serve a concurrent term of five years of probation. N.T. Sentencing, 12/15/23, at 17-18.

Appellant filed a timely notice of appeal. He raises two claims to this Court:

1. Should the trial court have suppressed the gun that was forcibly abandoned by Appellant and recovered by police following an illegal stop and seizure of [Appellant], as well as all other evidence stemming from this illegal arrest as fruit of the poisonous tree[?]

2. Should the trial court have allowed defense counsel to cross-examine the arresting officer regarding the factual basis for his determination that the area in question was a "high crime area?"

Appellant's Brief at 2.

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Nicholas Kamau. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Kamau's May 24, 2024 opinion. Therefore, we affirm on the basis of Judge Kamau's able opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Kamau's May 24, 2024 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/05/2025

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH

**FILED**

VS.

MAY 2 4 2024

JAMIL COOK

Appeals/Post-Trial
Office of Judicial Records

CP-51-CR-2752-2023

SUPERIOR COURT
NO. 325 EDA 2024

## OPINION

**By: The Honorable Nicholas Kamau**

## PROCEDURAL HISTORY

On March 8, 2023, Jamil Cook (hereinafter "appellant") was arrested and charged with violating 18 Pa.C.S. §§ 6105, 6106 and 6108 of the Uniform Firearms Act.

Appellant subsequently filed a Motion to Suppress. On September 12, 2023, this court denied appellant's suppression motion.

On December 15, 2024, appellant entered a negotiated to plea the § 6105 bill (Possession of Firearm Prohibited), graded as a felony of the first degree. Pursuant to the terms of the plea agreement, the Commonwealth agreed to drop the remaining charges and had no objection to appellant reserving the right to appeal the denial of his Motion to Suppress. This court accepted the negotiated plea and sentenced appellant to eleven-and-a-half (11 ½) to twenty-three (5) months in jail followed by five (5) years of probation.

This timely appeal followed.

## FACTS

During appellant's suppression hearing, the Commonwealth presented the testimony of Philadelphia Police Officers Grace Oyana and Pedro Ramos and Detective Adam O'Donnell. It also introduced body-cam footage of the alleged incident. The relevant facts are as follows:

On March 8, 2023, Officers Oyana and Ramos were on routine patrol in the 25th Police District. At around 5:45 p.m., the officers observed three males, one of whom was appellant, standing outside of a gas station at 101 West Lehigh Avenue. According to the officers, that particular location is considered a high crime area, known for illegal narcotics activity, firearms offenses and a recent shooting. (N.T., 9/12/23, pp. 7-10, 36-37).

The officers pulled their marked patrol car into the gas station to investigate. They did not activate their lights or siren, nor did they give any verbal commands or make a show of force to any of the three men. Nevertheless, appellant started to walk away as the officers approached. Officer Oyana exited the patrol car and walked in the same direction as appellant while Officer Ramos approached the other men who remained in front of the gas station. Officer Oyana testified that appellant walked between two cars and then started to run. Both Officers pursued appellant as he fled on foot. During the brief foot pursuit, appellant reached into his waistband and discarded a firearm. Officer Oyana eventually caught and arrested appellant. While Officer Oyana was placing appellant in handcuffs, Officer Ramos recovered the gun appellant discarded. (N.T., 9/12/23, pp. 11-35; 38-43; Commonwealth Exhibits C-1 and C-2).

Later that day, appellant met with Detective O'Donnell. After receiving his Miranda Warnings, appellant gave a statement. Shortly thereafter a search warrant for appellants DNA was obtained and the sample was received. (N.T., 9/12/23, pp. 44-52).

## ISSUE(S)

Appellant raises the following claims on appeal:

1. The trial court erred by failing to suppress evidence (firearm, DNA evidence and all statements made by appellant) as fruit of the poisonous tree, because appellant's stop and arrest were not supported by either reasonable suspicion or probable cause; and

2. the trial court erred by sustained the Commonwealth's objection to defense counsel's cross-examination regarding the arresting officer's testimony that the area in question was a "high crime" area thereby denying appellant due process, the right to a fair trial, and the right to confront witnesses.

See Appellant's Statement of Matters Complained of on Appeal.


## DISCUSSION

### I.  Suppression

The standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] legally bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted).

There are three types of encounters between law enforcement officials and private citizens. A "mere encounter" need not be supported by any level of suspicion but carries no official

3

compulsion to stop or respond. In re J.G., 145 A.3d 1179, 1185 (Pa. Super. 2016) (citations omitted). An investigative detention must be supported by reasonable suspicion, Commonwealth v. Acosta, 815 A.2d 1078, 1083 (Pa.Super.2003) (en banc), and an arrest or custodial detention must be supported by probable cause. Commonwealth v. Phinn, 761 A.2d 176, 181 (Pa.Super.2000) (citing Commonwealth v. Ellis, 662 A.2d 1043, 1047 (Pa. 1995)).

In the instant case, both officers had considerable experience and described the specific location at issue as a high crime area. Officer Oyana stated that police were routinely summoned to that particular gas station multiple times each day for illegal narcotics activity and/or gun crimes. The officers' initial action was—if anything—a mere encounter. They did not activate their lights or siren, did not order appellant and his companions to stop, did not draw their weapons or make a show of force as they exited their patrol vehicle. The officers simply attempted to approach the men to engage them in conversation. As stated above, a mere encounter does not require a showing of reasonable suspicion. See In the Interest of D.M., 781 A.2d 1161, 1164–1165 (Pa. 2001) ("[P]olice may approach anyone in a public place to talk to him, without any level of suspicion, but the citizen 'has a right to ignore the police and go about his business.'").

Before Officer Oyana was able to engage appellant in conversation he ran from the gas station. Instead of ignoring Officers Oyana and Ramos or answering their inquiries, appellant fled. It is well settled that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop. Commonwealth v. Brown, 904 A.2d 925 (Pa.Super.2006). ("...it is clear that unprovoked flight in a high crime area establishes a reasonable suspicion to believe that criminal activity is afoot to allow for a Terry stop. To determine whether the police have reasonable suspicion, the totality of the circumstances must be examined.")

4

Examining the totality of circumstances in this case—appellant's evasive behavior in a high crime area, appellants unprovoked flight and the officers' extensive years of training and experience—the officers had reasonable suspicion that criminal activity was afoot. As a result, they had the right to pursue appellant. While officers chased appellant, they observed him remove a firearm from his waist and discard it over a chain link fence. This observation gave rise to probable cause for appellant's arrest.

Appellant's Motion to Suppress was properly denied, and the evidence seized by the police was not the fruit of an illegal search and seizure.

## II. Due Process/Cross-Examination Claim

Next, appellant contends that this court erred when it sustained the Commonwealth's objection to defense counsel's cross-examination of the arresting officer's testimony regarding the level of crime in the area. This claim has no merit and is belied by the record.

During defense counsel's cross-examination of Officer Oyana, the following exchange took place:

MR. REHMAN: Officer Oyana, could you give any indication as to the level of crime of the 25th district as compared to other districts that might surround, such as the 24th, the 26th, and the 22nd?

ADA MCBETH: Objection as to relevancy?

THE COURT: What is the relevancy?

MR. REHMAN: So, opposing counsel did in her direct examination bring out the fact that the 25th district is supposedly a high crime area. I want to find some context about this and determine how this high crime area factor figures into probable cause by comparing it to surrounding districts.

5

THE COURT:      So, the direct was specifically made -- basically it was in reference to the high crime area, wasn't it? It was specific to 101 [West] Lehigh Ave. There may have been a brief question about the 25th District in general, but more specifically the point of relevance [was an] inquiry about 101 [West] Leigh Avenue.

MR. REMAN:      Understood. I will move on.

(N.T., 9/12/23, pp. 18-19).

It is clear from this line of questioning that, while the court ruled that questioning the witness(es) about crime rates in surrounding police districts was irrelevant, it did not infringe upon appellant's ability to cross-examine the officers about crime at 101 West Lehigh Avenue, which was the specific location referred to by the officers. In fact, defense counsel went on to question the officers about crimes that occurred at that location.

DATE:                                              BY THE COURT:

May 23, 2024

                                                   KAMAU, J.

6