**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Haleem L. LYLES, Appellee.**

Superior Court of Pennsylvania.

Submitted April 16, 2012.

Filed Sept. 10, 2012.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Paul J. Hetznecker, Philadelphia, for appellee.

BEFORE: BENDER, J., LAZARUS, J., and STRASSBURGER, J.*

OPINION BY BENDER, J.:

The Commonwealth appeals the suppression court's ruling on Appellee's motion to suppress the evidence entered on the record on March 15, 2011. Finding no reasonable suspicion to request Appellee's identification, the court suppressed the narcotics subsequently seized on Appellee's person as fruit of the poisonous tree. After careful review, we reverse.

The suppression court summarized the "sum and substance of the credible testimony and evidence from the suppression hearing" as follows:

On July 11, 2009 at approximately 4:30 PM, while patrolling the neighborhood in a marked police car, Police Officers Dobbins and Lai observed Appellee and another male sitting in front of an apparently vacant building at 1048 South Dorrance Street. Officer Dobbins testified that, due to the large number of burglaries that had been reported in the area, he approached Appellee and his companion to question their reason for being there. After Appellee explained that he was on the street because his grandmother lived on that block, Dobbins requested his identification. While Dobbins was writing down the information on Appellee's identification card, he observed Appellee turning his right side away from easy view and placing his hand in his right shorts pocket. Dobbins told Appellee to remove his hand from his pocket and stop moving, and Appellee complied. Appellee again put his hand into his right pocket and Dobbins, believing he may have been reaching for a concealed weapon, instructed him a second time to remove his hand. Subsequently, Appellee put his hand into his pocket a third time, prompting Dobbins to put Appellee against the wall to frisk him and check for weapons. Appellee again placed his hand in his pocket, and when Dobbins forcibly removed Appellee's hand, a plastic bag was visible at the top of the pocket containing blue packets filled with an off-white chunky substance, allegedly crack cocaine. Officer Lai handcuffed Appellee and completed the search, which also uncovered a plastic bag containing a green leafy substance, allegedly marijuana.

Suppression Court Opinion (S.C.O.), 7/13/11, at 1—2.[1]

■ The applicable standard of review in a Commonwealth appeal from an

---

* Retired Senior Judge assigned to the Superior Court.

1. Appellee's testimony differed sharply from Dobbins' testimony in some respects. However, the suppression court expressly found Dobbins' testimony more credible. *See* S.C.O., at 2 n. 1.

order of suppression is well-settled. We "must first determine whether the factual findings are supported by the record, and then determine whether the inferences and legal conclusions drawn from those findings are reasonable." *Commonwealth v. Luv*, 557 Pa. 570, 735 A.2d 87, 90 (1999) (citing *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190 (1997)). We may "consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Carter*, 779 A.2d 591, 592–93 (Pa.Super.2001) (quoting *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998)). When "the evidence supports the suppression court's findings of fact . . ., this Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Id.* at 593 (quoting *Commonwealth v. Valentin*, 748 A.2d 711, 713 (Pa.Super.2000)).

■ Our courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend. IV and P.A. CONST. art. I, § 8.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn*, 761 A.2d 176, 181 (Pa.Super.2000) (quoting *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations and footnotes omitted)).

> [I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether or not the citizen-subject has been seized. Instances of police questioning involving no seizure or detentive aspect (mere or consensual encounters) need not be supported by any level of suspicion in order to maintain validity. Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or *Terry* stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters. To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion; whereas, a custodial detention is legal only if based on probable cause. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances ap-

proach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889–90 (2000) (internal citations and footnotes omitted).

The sole issue presented for review in the instant appeal is whether an investigative detention occurred when Officer Dobbins requested Appellee's identification. If Appellee's interaction with Officer Dobbins rose to the level of an investigative detention when Dobbins requested Appellee's identification, then the subsequent discovery of contraband on Appellee's person should have been suppressed as fruit of the poisonous tree because the suppression court found that Dobbins did not have a reasonable suspicion to suspect that criminal activity was afoot at that moment in time.[2] If, however, the encounter did not rise to the level of an investigative detention when the request for identification was made, then Dobbins and Appellee were only engaged in a mere encounter. In the latter case, Dobbins' subsequent observations of Appellee's furtive movements, justifying Dobbins limited search for weapons for officer safety and which ultimately revealed the contraband, should not have been suppressed.

The suppression court determined that Dobbins' request for Appellee's identification elevated a mere encounter into an investigative detention because:

> By asking for proof of Appellee's identification, Dobbins made it clear that he was not satisfied with Appellee's explanation for his presence. Dobbins['] request for identification indicated an intention to investigate further, and left Appellee with no option to leave, unless he wished to leave his identification card behind. Even Dobbins believed that Appellee was not free to leave at that point. While the test for whether a seizure occurred is not whether the officer or individual actually believed the individual was free to leave, the fact that the officer in question did not believe Appellee was free to leave is highly suggestive of the tenor of their encounter. Under the circumstances here, a reasonable person simply would not have felt free to ignore the officer's request and go on his or her way.

S.C.O., at 4. Thus, the court suppressed the subsequently seized contraband. Its decision was based upon the above factual findings and inferences, as well as two prior decisions of this court, *Commonwealth v. Stevenson*, 832 A.2d 1123 (Pa.Super.2003), and *Commonwealth v. Au*, 986 A.2d 864 (Pa.Super.2009) *(en banc)*, *rev'd*, —— Pa. ——, 42 A.3d 1002 (2012).

The Commonwealth argues that the suppression court erred in granting suppression. The Commonwealth asserts that Dobbins' request for Appellee's identification did not constitute a seizure in the totality of the circumstances presented to the court in this case. The Commonwealth supports this argument by the fact that Appellee voluntarily parted with his identification card, Appellee did not refuse to hand it over, and he did not ask Dobbins to return it to him. Commonwealth's Brief, at 12. The Commonwealth argues that these facts undermine the suppression court's inference that Appellee was left "with no option to leave, unless he wished to leave his identification card behind." S.C.O., at 4.

In *Au*, an *en banc* panel of the Superior Court considered the following factual circumstances:

**2.** In its brief, the Commonwealth does not dispute that Officer Dobbins did not have a reasonable suspicion that criminal activity was afoot when he requested Appellee's identification.

While on routine patrol on May 31, 2007, Sergeant Ryan Hendrick of the Ferguson Township Police Department observed a vehicle backed in and parked at Watkins Dariette (hereinafter "Dariette") on East Pine Grove Road at approximately 12:29 a.m. The Dariette closed several hours earlier, between 9:00 p.m. and 10:00 p.m. Sgt. Hendrick noted that the car was not parked at the Dariette several minutes earlier when he patrolled the same area. He pulled into the parking lot and positioned his marked cruiser so that his headlights were shining directly into the passenger compartment of the vehicle. The officer did not, however, activate his overhead emergency lights.

After exiting his police cruiser, Sgt. Hendrick, who was dressed in full uniform, approached the passenger's side of the vehicle where Defendant was seated. He discovered that the car had six occupants; two males in the front and four females in the rear. The driver, and also the owner of the car, was later determined to be Jason Price. Sgt. Hendrick asked why they were parked at the Dariette, to which an unidentified female answered "hanging out." He then requested each individual produce a form of identification. Defendant opened the glove box of Mr. Price's car to retrieve his license. Sgt. Hendrick observed, in plain view, two baggies of a green leafy substance that he suspected to be marijuana.

986 A.2d at 865.

The *Au* majority, in a sharply divided *en banc* panel, determined that "no person would have felt free to terminate the encounter and depart the scene" and thus concluded that an investigative detention had occurred once the officer requested identification (thus, leading to the conclusion that absent reasonable suspicion at that point in time, suppression of the subsequently discovered contraband was warranted). *Id.* at 867. The *Au* majority reasoned that:

> While a person in Appellee's situation may have surmised that the officer initiated the encounter to merely check upon the vehicle and its occupants, the subsequent request for identification from all of the vehicle's occupants would have signaled to any reasonable person that the officer was unsatisfied with the response that the occupants were just hanging out, and that the officer wanted to investigate further. Knowing that the officer sought to investigate further and that this was no longer a situation where the officer was just checking in to see if the occupants were in need of assistance, no reasonable person would have felt free to terminate the encounter.

*Id.*

Our Supreme Court granted the Commonwealth's petition for allowance of appeal and ultimately reversed. *See Au*, 42 A.3d 1002. The Supreme Court ruminated that:

> under Fourth Amendment law as reflected in the decisions of the United States Supreme Court, a request for identification is not to be regarded as escalatory in terms of the coercive aspects of a police-citizen encounter. *Cf.* [*INS v.*] *Delgado,* 466 U.S. [210], 216, 104 S.Ct. [1758, 80 L.Ed.2d 247 (1984)] ("What is apparent from [past decisions] is that police questioning, by itself, is unlikely to result in a Fourth Amendment violation."). The Superior Court majority, therefore, departed from this precedent in attributing such effect to the arresting officer's request along these lines.

*Au*, 42 A.3d at 1007. After having excised the escalatory inference deriving from the

request for identification, as made by the Majority of the *en banc* panel of the Superior Court, the Supreme Court analyzed the totality of the circumstances in *Au* as follows:

> In the present case, the arresting officer's unrebutted testimony indicates that he did not: activate the emergency lights on his vehicle; position his vehicle so as to block the car that Appellee was seated in from exiting the parking lot; brandish his weapon; make an intimidating movement or overwhelming show of force; make a threat or a command; or speak in an authoritative tone. In terms of the use of the arresting officer's headlights and flashlight, this was in furtherance of the officer's safety, and we conclude it was within the ambit of acceptable, non-escalatory factors. Indeed, as suggested by Judge Shogan [the Dissenting Opinion author], such lighting would appear to create a lesser potential for psychological coercion than the circumstances surrounding systematic drug interdiction efforts at bus terminals and airports. Thus, we do not find this to be the sort of escalatory factor upon which a determination of a seizure may be founded for Fourth Amendment purposes.
>
> We also appreciate that the arresting officer could have informed Appellee that he was free to leave and had the right to refuse the request for identification, which might have ameliorated the potential for perceptions of restraint or coercion. In this area of Fourth Amendment law, however, the United States Supreme Court has eschewed bright-line rules in favor of the totality assessment.
>
> . . .
>
> Pursuant to governing Fourth Amendment law, we hold that the arresting officer's request for identification did not transform his encounter with Appellee into an unconstitutional investigatory detention.

*Id.* at 1008–09.

In the case at hand, the suppression court expressly stated that the "interaction between Officer Dobbins and Appellee rose from a mere encounter to an investigative detention when Dobbins requested Appellee's identification[,]" relying heavily upon the reasoning that "Dobbins['] request for identification indicated an intention to investigate further, and left Appellee with no option to leave, unless he wished to leave his identification card behind." S.C.O., at 4. This escalatory inference attributed to the act of requesting identification is precisely what our Supreme Court rejected in *Au*. A request for identification does not, by itself, transform a mere encounter into an investigative detention.

*Stevenson*, also cited by the suppression court, is distinguishable from both the instant case and *Au*. In *Stevenson*, this court determined that an encounter had risen to the level of investigative detention where a police officer "and his partner approached Appellant's vehicle on foot. [The officer] told [Stevenson] to roll down his window. [The officer] repeatedly told [Stevenson] to end his cell phone conversation. When [Stevenson] did finally end his phone conversation, [the officer] asked [Stevenson] if he had a driver's license." *Stevenson*, 832 A.2d at 1130. When Stevenson told the officers he did not have a license, he was ordered to step out of his car. *Id.* at 1125. We concluded that in the totality of the circumstances, "a reasonable person in [the a]ppellant's situation would not have felt free to ignore the officer's requests and simply drive off. Thus, the encounter between the officers and [a]ppellant constituted an investigative detention." *Id.* at 1130 (internal citation omitted).

Thus, in *Stevenson,* the police ordered the appellant to roll down his window, to end his cell phone conversation, and when he failed to produce his license upon request, he was ordered out of his vehicle. These factors all strongly suggest that the appellant in *Stevenson* was not free to leave, as his actions and movements were being directly and explicitly controlled by the police. Nothing analogous to those factors were present in the instant case or *Au.* Furthermore, the request for identification made by the officers in *Stevenson* was not a sole or even primary factor in transforming a mere encounter into an investigative detention.

█ In the instant case, the interaction between Appellee and the officers occurred in the afternoon, at 4:30 p.m. Though the police arrived in a marked vehicle, there was no evidence that they engaged their siren or lights. The two uniformed officers approached Appellee and another individual and asked what they were doing in front of an abandoned building. After Appellee responded that his grandmother lived nearby, Officer Dobbins requested his identification. There was no credible evidence suggesting the officers engaged in intimidating movements or an overwhelming show of force. There was no evidence that either officer brandished a weapon. There was no evidence that the officers threatened any consequences for non-compliance with the request for identification, and the only demand made was that Appellee was told to keep his hand out of his pocket while the officers were writing down the information on his identification. This minor inconvenience was not a substantial impairment on Appellee's liberty of movement, particularly considering the officers legitimate concerns for their own safety.

█ Appellee directs our attention to Dobbins' statement that while he was writing down the information from the identification, he did not believe that Appellee was free to leave. N.T., 3/15/11, at 13. The suppression court found this fact "highly suggestive of the tenor of their encounter" despite acknowledging that "the test for whether a seizure occurred is not whether the officer or individual actually believed the individual was free to leave." S.C.O., at 4. The test employed to determine whether a seizure occurred is, indeed, an objective one. The officer's subjective beliefs are largely immaterial to the consideration of whether a reasonable person would feel free to leave absent some objective manifestation or demonstration of that belief to Appellee during the encounter.

Dobbins did not tell Appellee that Appellee was not free to leave, nor was there any credible evidence presented of physical restraint. The officers did not draw their weapons or position themselves in a manner that obstructed Appellee's ability to walk away. Furthermore, as noted by the Commonwealth, Appellee had voluntarily surrendered his identification, and there is no evidence that, in the few moments between the identification request and Appellee's engagement in furtive movements, Appellee had requested that the identification be returned. The suppression court simply fails to demonstrate how the tenor of the encounter was inherently coercive absent the subjective belief of the officer, which is, by itself, an impermissible consideration.

We conclude that without the suppression court's inference that the request for identification escalated the encounter into one in which a reasonable person would not be free to leave, the totality of the circumstances presented in this case fail to support a conclusion that Appellee had been seized. Accordingly, we are constrained by *Au* to conclude that the lower

court erred in granting suppression in this case, because Appellee and Officer Dobbins were still engaged in a mere encounter, and not an investigative detention, when Dobbins requested Appellee's identification.

Order reversed. Remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judge STRASSBURGER files a concurring opinion in which Judge BENDER joins.

Judge LAZARUS files a dissenting opinion.

## CONCURRING OPINION BY STRASSBURGER, J.:

I join Judge Bender's well-reasoned opinion.

I write separately to point out that the case law has developed into an Alice in Wonderland scenario, as judges attempt to determine if an individual is or is not free to leave.

When a police officer initiates an encounter, an individual as a practical matter **never** feels free to leave. The police officer has a weapon. The police officer's testimony is almost always believed in court. No responsible person would walk away from an encounter with a police officer.

Lawyers, judges and law professors can debate the niceties as to whether an individual is legally free to leave, but the case law does not comport with reality.

## DISSENTING OPINION BY LAZARUS, J.

I respectfully dissent. Contrary to the majority, I do not find the Supreme Court's recent decision in *Commonwealth v. Au*, — Pa. —, 42 A.3d 1002 (2012), determinative, factually or legally, in this case. After reviewing the record and the relevant law, it is my opinion that Officer Dobbins subjected Lyles to an unlawful investigative detention, unsupported by reasonable suspicion. Therefore, the suppression court properly granted Lyles' motion.

On July 11, 2009 at approximately 4:30 p.m., Officer Dobbins and his partner, both in uniform and in a marked car, approached Lyles and another male in front of a vacant property in Philadelphia. The officers exited their vehicle and asked Lyles who he was and why he was there. Lyles identified himself and informed the officers that his grandmother lived on the block. Not satisfied with this response, Officer Dobbins asked Lyles for identification, and began to write down the information. Under the totality of the circumstances here, this request elevated the interaction between the officers and Lyles to an investigative detention. We recognized this in *Commonwealth v. Hudson*, 995 A.2d 1253 (Pa.Super.2010), when we determined that an officer effectuated an investigative detention when he took and maintained possession of the citizen's identification. Objectively, no reasonable person would believe he was free to ignore that command or free to leave. Clearly, Officer Dobbins' command that Lyles produce proof of his identification would indicate to a reasonable person that this was no longer a situation where the officer was simply asking him to identify himself and what he and his companion were doing in the area. No reasonable person would have felt free to terminate the encounter. *See Commonwealth v. DeHart*, 745 A.2d 633, 639 (Pa.Super.2000) (holding investigative detention occurred when officer, after initial inquiry, exited vehicle and approached defendant because officer "chose to escalate

the encounter to afford greater investigation, which, of course, is consistent with the purpose of an investigative detention.").

In *Au*, the arresting officer, while on routine patrol in the early morning hours, came upon an automobile parked in a parking lot of a business premises. 42 A.3d at 1003. The officer positioned his police cruiser so that the lights illuminated the parked automobile. He approached the vehicle with a flashlight and saw six occupants, the four in the back seat appearing to be juveniles. *Id.* The officer inquired whether everyone was 18, and the four occupants in the back seat said no. *Id.* At this point the officer asked the male in the passenger seat for identification, and he opened the glove box. The officer saw two bags of what was clearly marijuana in plain view in the glove box. *Id.* at 1003–1004. In holding that the request for identification here did not transform the encounter into an investigatory detention, our Supreme Court framed the issue as "whether a seizure occurred *in the circumstances reflected* in the arresting officer's undisputed testimony[.]" *Id.* at 1006 (emphasis added). The line separating mere encounters from investigative detentions cannot hinge on one factor alone. *See Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889–90 (2000).

In my opinion, an officer's request for identification alone cannot transform a mere encounter into an investigative detention. However, in the circumstances here, where the officer is not satisfied with the citizen's verbal response, and not satisfied with merely looking at his identification, but goes on to write down the information, there is no doubt that the officer is engaging in an investigation. Officer Dobbins' act of recording Lyles' information was a show of authority, indicating that Lyles was not free to leave. As the sup-

pression court notes, "Even Dobbins believed that [Lyles] was not free to leave at that point." Trial Court Opinion, 7/15/2011, at 4 (quoting N.T. Suppression Hearing, 3/15/2011, at 13). Without any reasonable suspicion of criminal activity, Officer Dobbins had no reason to go beyond questioning. *See Commonwealth v. DeHart, supra* at 639 (investigative detention occurred where officer, after initial questioning, exited vehicle and approached defendants because he "chose to escalate the encounter to afford greater investigation[.]"); *see also Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").

The majority frames the issue in such a way as to make the holding of *Au* determinative, that a request for identification does not automatically transform a mere encounter into an investigative detention. The majority states: "The sole issue presented for our review is whether an investigative detention occurred when Dobbins requested [Lyles'] identification." Majority Opinion, at 80. The correct inquiry, in my view, is whether, under the totality of these circumstances, a reasonable person would have felt free to walk away. It is the totality of the circumstances, including those that arise after the request for identification, which determine whether an investigative detention has taken place. *Strickler*, 757 A.2d at 889–90.

Additionally, the majority also makes no attempt to reconcile the factual distinctions in these cases. Here, two men were in front of a building in the daylight hours. There were no reports of a crime in progress. Lyles identified himself at the officer's request, and responded to the officer's question about what he was doing

there. By contrast, in *Au* the officer responded to an unusual situation, a car parked in a business lot in the middle of the night, while the business was closed, and where four of the car's occupants were juveniles.

The majority states that this Court is "constrained by *Au* to conclude that the lower court erred by granting suppression in this case[.]" Majority Opinion, at 83–84. Accordingly, it interprets *Au* as establishing a bright-line rule that an officer's request for identification does not elevate an encounter to an investigative detention. This approach disregards both the totality of the circumstances test as well as the critical factual distinctions between *Au* and this case. While the majority's interpretation of *Au* is not incorrect, its application to the present matter is misplaced. Officer Dobbin's actions placed Lyles in an unlawful investigative detention, not because he asked for his identification, but because the totality of the circumstances created a situation where a reasonable person would not feel free to walk away.

In conclusion, I find no error in the suppression court's determination that, under the totality of the circumstances, Officer Dobbins' request for identification here elevated the encounter to an investigative detention unsupported by reasonable suspicion of criminal activity. I would affirm the suppression court's order.