J-S20021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRIAN BANTUM, | |
| Appellant | No. 1123 WDA 2014 |

Appeal from the Judgment of Sentence Entered on June 10, 2014
In the Court of Common Pleas of Blair County
Criminal Division at No.: CP-07-CR-0000331-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and WECHT, JJ.

DISSENTING MEMORANDUM BY WECHT, J.          **FILED JULY 14, 2015**

The learned Majority holds that the initial interaction between Officer Thomas Venios and Brian Bantum on November 4, 2012, was supported by reasonable suspicion.  In reaching that conclusion, the Majority appropriately recites the well-established principle espoused by our Supreme Court: a police officer must be able to point to specific facts and reasonable inferences drawn from those facts in light of the officer's experience, in order to demonstrate reasonable suspicion.  ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa. 1999).   Officer Venios articulated many facts, including Bantum's presence in a high-crime area, which the learned Majority relies upon to support its finding of reasonable suspicion.  However, those facts, and any reasonable inferences drawn therefrom, were insufficient to support Officer Venios' belief that criminal activity was afoot.  Because Officer Venios

could not proffer any reasonable inference to support his belief of criminal activity, I respectfully dissent.

As a preliminary matter, I agree with the Majority's choice to analyze the initial interaction between Officer Venios and Bantum as an investigative detention. However, I do not, as the Majority did, need to assume this classification. *See* Maj. Mem. at 6. Clearly, the initial interaction between Officer Venios and Bantum on November 4, 2012, was an investigative detention. The relevant inquiry in distinguishing between a mere encounter and an investigatory detention is "whether a reasonable person would have believed that [he] was free to leave, and to this end the inquiry must focus on whether the police officer, either by physical force or by show of authority, has restricted the defendant's movement in some way." *Commonwealth v. Caben*, 60 A.3d 120, 128 (Pa. Super. 2012).

Officer Venios testified that he noticed Bantum standing in front of a church located in a high-crime area, which caused him to drive towards Bantum to investigate. Notes of Testimony ("N.T."), 10/11/2013, at 19, 24. At approximately 1:17 a.m., Officer Venios stopped his car "in the opposite lane of travel" approximately five to ten feet from Bantum, turned his spotlight on, directed the spotlight at Bantum, exited his vehicle, and approached Bantum. *Id.* at 22, 24-25. Officer Venios was driving a marked car and in full uniform that evening. *Id.* at 3-4. Bantum did not attempt to move or flee at any point during this encounter. *Id.* at 23, 35.

- 2 -

In viewing all of the surrounding circumstances, it is clear that a reasonable person standing in Bantum's shoes would not have felt that he or she was free to depart.[1]  Officer Venios did not use any physical force to restrain Bantum during this initial interaction; however, his display of authority and the location and timing of the interaction clearly demonstrate that Officer Venios effectuated an investigative detention when he initially approached Bantum on November 4, 2012.

As previously mentioned, an investigative detention must be supported by reasonable suspicion.  ***Commonwealth v. Hudson***, 995 A.2d A.2d 1253, 1256 (Pa. Super. 2010).  The inquiry into whether a police officer had reasonable suspicion to stop a defendant is a dual one, which requires us to determine whether the officer's action was justified at its inception, and whether it was reasonably related in scope of the circumstances that

_____

[1]  This Court, in ***Commonwealth v. Lyles***, 54 A.3d 76 (Pa. Super 2012), highlighted the inherent difficulty in attempting to objectively analyze an individual's subjective perception of restraint.  ***Lyles***, 54 A.3d at 84.  In an interesting but non-binding concurring opinion, Judge Strassburger attempted to reconcile this difficulty by pointing out an undeniable perception of police authority:

> When a police officer initiates an encounter, an individual as a practical matter **never** feels free to leave.  The police officer has a weapon.  The police officer's testimony is almost always believed in court.  No responsible person would walk away from an encounter with a police officer.

***Id.*** (emphasis in the original).

justified the interference in the first place. ***Commonwealth v. Guzman***, 44 A.3d 688, 692-93 (Pa. Super. 2012). Accordingly, a review of Officer Venios' investigative detention of Bantum is, in part, temporal in nature. Concluding that Officer Venios effectuated an investigative detention when he initially approached Bantum, he must at that moment be able to, as the Majority notes, point to specific facts and reasonable inferences drawn from those facts in light of his experience, in order to demonstrate reasonable suspicion. ***See Cook***, 735 A.2d at 677.

In the instant case, Officer Venios and numerous other police officers from the Altoona Police Department responded to a disturbance call at a local bar on November 4, 2012, at approximately 1 a.m.. N.T., 10/11/2013, at 2-4. Upon arrival, Officer Venios and the other police officers defused the situation and dispersed the patrons from the bar. ***Id.*** After dispersing the patrons from the bar, Officer Venios returned to his patrol car and "started circling around the area just to make sure that the people were moving along." ***Id.*** at 4.

At approximately 1:17 a.m., Officer Venios observed Bantum standing in front of a church approximately one block away from the bar.[2] ***Id.*** at 6.

_____

[2]    It is unclear precisely how much time passed between Officer Venios' response to the bar and Bantum's arrest. Officer Venios testified that he responded to the bar disturbance at approximately 1:15 or 1:17 a.m. and that he arrested Bantum at 1:17 a.m.. N.T., 10/11/2013, at 3, 28. Notwithstanding this minor discrepancy, it is reasonable to conclude that

*(Footnote Continued Next Page)*

Officer Venios testified that the church was located in a high-crime area. *Id.* at 5-6. Bantum, Officer Venios testified, was standing under a dark recess near a set of stairs connected to the church and appeared to be speaking on a cell phone. *Id.* 6-7, 17, 24. Officer Venios also testified that Bantum's presence in front of the church was suspicious because the church was closed at the time. *Id.* at 7. Specifically, Officer Venios testified, "I couldn't tell if it was somebody who was not dispersing from the area[,] which is what I was looking for[,] or if it was someone who [was] trying to break into the church." *Id.* Upon arriving at the church, Officer Venios illuminated his spotlight towards Bantum, exited his vehicle, and immediately approached Bantum. *Id.* At some point during his approach, Officer Venios recognized Bantum as an individual who was present in front of the local bar that he had just departed. *Id.* 14-15.

Officer Venios' suspicion that Bantum was involved in some criminal activity was not a reasonable inference to draw from the totality of these facts. At the onset of Officer Venios' investigative detention of Bantum, Officer Venios did not observe any illegal or unusual activity. *Id.* at 25-26. In fact, Officer Venios witnessed no signs of Bantum attempting to break

*(Footnote Continued)* _____

Officer Venios' response to the bar and Bantum's arrest all occurred between 1:00 a.m. and 1:17 a.m..

- 5 -

into the church. *Id.* at 26. Officer Venios merely observed Bantum standing in front of the church while, perhaps, speaking on a cell phone. *Id.* at 24.

Considering the totality of the circumstances, Officer Venios did not have reasonable suspicion to believe that criminal activity was afoot. Officer Venios sighted Bantum minutes after dispersing the many patrons from the local bar. The church where Bantum was standing was located only a block away from that bar. At some point while approaching Bantum, Officer Venios recognized Bantum as a patron present at the bar that night. Officer Venios maintains that he wanted to ensure that Bantum was not breaking into the church; however, a police officer's determination of reasonable suspicion must be based upon common sense and inferences about human behavior. *In re M.D.*, 781 A.2d 192, 199 (Pa. Super. 2001). Neither Bantum's geographic proximity to the bar nor the closeness in time between Officer Venios' response to the bar and Bantum's arrest precluded Bantum from engaging in criminal activity. However, considering the totality of these circumstances, common sense can yield no reasonable inference to support a belief of criminal activity. The impetus behind Officer Venios' suspicion was Bantum's presence in a high-crime area, which by itself does not form the basis for reasonable suspicion. *See Commonwealth v. Leonard*, 951 A.2d 393, 396 (Pa. Super. 2008) (holding that presence in a high-crime area alone does not form the basis for reasonable suspicion). Consequently, Officer Venios effectuated an investigative detention of Bantum, which was not supported by reasonable suspicion.

For the foregoing reasons, I would find that the totality of the circumstances do not give rise to specific and articulable facts supporting reasonable suspicion that Bantum was engaged in or about to engage in criminal activity, and that the investigative detention, therefore, was unconstitutional. Accordingly, I would reverse the trial court's order denying Bantum's motion to suppress. The Majority having concluded otherwise, I respectfully dissent.