J-A15006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT WHEATLEY | |
| Appellant | No. 2467 EDA 2014 |

Appeal from the Judgment of Sentence July 18, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0001753-2014

BEFORE:  BOWES, MUNDY, AND FITZGERALD* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 16, 2015**

Robert Wheatley appeals from the judgment of sentence of one to two years incarceration to be followed by one year probation imposed by the trial court after it found him guilty of driving under the influence ("DUI") highest rate, third offense and a third offense DUI—general impairment.  We affirm.

The trial court delineated the following facts.

On September 27, 2013, Officer Scott Patrick, an officer with the Middletown Township Police, was on patrol near the Summit Square Shopping Center.  Officer Patrick was in full uniform and driving a marked patrol vehicle.  At approximately 3:45 a.m., Officer Patrick observed the Appellant driving a silver Ford F150 pickup truck on Country Lane.  Officer Patrick saw the Appellant make a wider than normal turn onto Doublewooods [sic] Road, which drew Officer Patrick's attention to the Appellant.  At that time, the Appellant pulled into the shopping center, turned around, proceeded into a fire lane and stopped in

---

* Former Justice specially assigned to the Superior Court.

front of the Giant store. A passenger in the Appellant's vehicle exited the truck and went into the Giant store.[1]

Officer Patrick pulled into the shopping center and noticed that the Appellant had stopped in the fire lane, so he backed up his vehicle until the driver's [sic] side windows were alongside each other. Officer Patrick stopped because he wanted to tell the Appellant to park in a parking space rather than the fire lane. Officer Patrick's window was down and he signaled for the Appellant to roll his window down so he could speak with him.

The Appellant told Officer Patrick that he had stopped to get cigarettes. At that time, Officer Patrick noticed a strong odor of alcohol and that the Appellant was slurring his speech. Officer Patrick then told the Appellant to stay where he was and turned his patrol vehicle around to pull up behind the Appellant's vehicle. Before he could do so, the Appellant pulled forward into the Giant parking lot and parked his vehicle. Officer Patrick pulled behind the Appellant and his overhead lights may have been activated at that time. Another officer, Mary Alice Felt, arrived at the scene at some point after Officer Patrick positioned his vehicle behind the Appellant's vehicle.

Officer Patrick exited his patrol vehicle and approached the Appellant's vehicle to ask for his license and registration. During this exchange with the Appellant, Officer Patrick noticed that the Appellant's speech was slurred, his breath smelled of alcohol, his motor skills were slow, and he had difficulty finding his driver's license and registration although they were in plain view. Officer Patrick asked the Appellant where he had been and why he came to Giant, to which the Appellant responded that he and his brother were coming from their mother's house and came to Giant to get cigarettes. Officer Patrick told the Appellant that he suspected that he was under the influence, and the Appellant stated that he had a few beers.

_____

[1] A surveillance video of the encounter shows that the passenger, Appellant's brother, exited the vehicle after Officer Patrick initially stopped next to Appellant and Appellant pulled away from the officer before parking.

At that point, Officer Patrick asked the Appellant to exit the truck and perform field sobriety tests. The Appellant nearly fell as he exited the truck and had trouble balancing. Officer Patrick began to explain the tests, at which time the Appellant stated that he was drunk. Officer Patrick decided not to conduct field sobriety tests because he did not believe that the Appellant could complete them in his condition. Instead, Officer Patrick administered a Portable Breathalyzer Test, which indicated the presence of alcohol on the Appellant's breath. Officer Patrick placed the Appellant under arrest for driving under the influence at that time. After his arrest, the Appellant was taken to the hospital for a blood alcohol test, which showed that Appellant's blood alcohol content was 0.208% alcohol by volume.

Trial Court Opinion, 9/25/14, at 1-3 (citations omitted).

The Commonwealth charged Appellant with two counts of DUI. Appellant filed a motion to suppress and the trial court conducted a suppression hearing. Immediately after the hearing, the court denied Appellant's motion and Appellant agreed to a stipulated non-jury trial. The evidence from the suppression hearing was incorporated and the court found Appellant guilty of the aforementioned crimes. Subsequently, the court sentenced Appellant to a term of one to two years imprisonment to be followed by one year of probation. This timely appeal ensued.

The trial court directed Appellant to comply with Pa.R.A.P. 1925(b). Appellant did so, and the court authored its Rule 1925(a) opinion. The matter is now ready for this Court's review. Appellant presents four issues for our consideration.

1. The suppression court erred in finding that the contact between Appellant and law enforcement on September 27,

- 3 -

2013 at the Summit Square Shopping Center in Bucks County was a mere encounter rather than an investigatory detention.

2. The suppression court erred in finding that the nature and circumstances of the contact between Appellant and law enforcement on September 27, 2013 did not constitute a seizure of Appellant.

3. The suppression court erred in failing to suppress evidence discovered as a result of the seizure of Appellant on September 27, 2013 at the Summit Square Shopping Center in Bucks County.

4. The suppression court erred in its findings of fact and conclusions of law.

Appellant's brief at 4 (footnote omitted).

Although Appellant purports to raise four separate issues, each claim is necessarily intertwined. The critical issue in this matter is whether the suppression court erred in finding that the officer's initial interaction with Appellant was a mere encounter. We find that it did not.

In evaluating a suppression ruling, we consider the evidence of the Commonwealth, as the prevailing party below, and any evidence of the defendant that is uncontradicted when examined in the context of the suppression record. *Commonwealth v. Sanders*, 42 A.3d 325, 330 (Pa.Super. 2012). This Court is bound by the factual findings of the suppression court where the record supports those findings and may only reverse when the legal conclusions drawn from those facts are in error. *Id*.

We begin by noting that in evaluating interaction between law enforcement and other citizens, Pennsylvania courts look to whether the

interaction is a mere encounter, an investigatory detention, or a custodial detention, *i.e.*, an arrest. The latter is not in question herein. A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. **Commonwealth v. Downey**, 39 A.3d 401, 405 (Pa.Super. 2012). At the same time, such an encounter does not carry any official compulsion for the party to stop or respond. **Id**. An investigative detention, however, subjects an individual to a stop and short period of detention. **Id**. This seizure does not involve actions that are so coercive as to comprise the equivalent of an arrest. **Id**. However, to conduct an investigative detention, police must have reasonable suspicion of criminal activity. **Id**.

"[T]his standard is met 'if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.'" **Commonwealth v. Kearney**, 601 A.2d 346, 348 (Pa.Super. 1992). It is well-settled that "[m]ere presence near a high crime area or in the vicinity of a recently reported crime, is not enough to warrant a **Terry** stop." **Id**. Rather, police "must observe irregular behavior before he initiates a stop and, concurrently to his observation, he must hold a belief that criminal activity is afoot." **Id**. We consider what level of interaction occurred under a totality of the circumstances test. **Commonwealth v. Williams**, 73 A.3d 609, 615-616 (Pa.Super. 2013). This standard is an

objective one, and looks to the reasonable belief of the citizen and not the subjective view of law enforcement. ***Commonwealth v. Lyles***, 54 A.3d 76, 83 (Pa.Super. 2012). "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." ***Id***. at 79-80. Accordingly, we look to whether "in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." ***Id***. at 79.

Appellant argues that Officer Patrick's conduct in following him into the grocery store parking lot, driving past him, and then reversing and asking him to roll down his window constituted an investigative detention. According to Appellant, these facts "evidenced a coercive show of authority such that Appellant felt he was restrained and not free to leave, nor would a reasonable person under the same circumstances have felt free to disregard the officer and/or leave[.]" Appellant's brief at 12.

Here, considering the totality of the circumstances, we find Appellant's position untenable. Appellant actually moved his truck away from the police officer and parked his truck after being directed to roll down his window and engaging in the initial interaction with the officer. Appellant's brother also exited the truck and went inside the grocery store. Further, even after Appellant parked, Officer Patrick did not block Appellant's ability to drive. Clearly, the officer's request to roll down Appellant's window was not so

coercive as to preclude Appellant from these actions. In this matter, a single officer, without displaying his weapon, blocking Appellant's ability to drive, or turning on his lights, requested Appellant to roll down his window by using a hand motion. When Appellant did so, the officer immediately detected the odor of alcohol and that Appellant's speech was slurred in speaking with the officer. These actions are not so coercive as to be an investigative detention. *See **Commonwealth v. Au***, 42 A.3d 1002 (Pa. 2012); *Lyles*, *supra*. Appellant's position is meritless.

Judgment of sentence affirmed.

Justice Fitzgerald joins in this memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/16/2015