J-S59008-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMARIO RAKEEM MARTIN, | |
| Appellant | No. 1616 WDA 2014 |

Appeal from the Judgment of Sentence September 3, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0003382-2013

BEFORE:  BOWES, DONOHUE, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                         **FILED FEBRUARY 16, 2016**

Jamario Rakeem Martin appeals from the judgment of sentence of five to ten years incarceration to be followed by two years probation after a jury found him guilty of carrying a firearm without a license, person not to possess a firearm, resisting arrest, flight to avoid apprehension, and disorderly conduct.  Counsel has filed a second petition to withdraw from representation and a brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), after we remanded for either a compliant **Anders** brief or a merits brief addressing the issue of the lawfulness of Appellant's arrest.  We now affirm and grant counsel's petition to withdraw.

---

* Former Justice specially assigned to the Superior Court.

In our prior memorandum, we delineated the salient facts and procedural history as follows.

On August 26, 2013, at approximately 11:15 p.m., officers of the Erie Police Department were looking for a wanted person, Ronnie Washington, in the high-crime area of 330 East 3rd Street, City of Erie, Pennsylvania. Officers had a description of Washington as a black male, wearing a white t-shirt and grey sweatpants.

While officers were standing on the sidewalk at 326 East 3rd, they observed an individual wearing a white t-shirt in front of 340 East 3rd. After the individual saw the police, he ran behind the house. The officers followed and observed three individuals, including [Appellant,] in the well-lighted backyard. [Appellant], who wore a red t-shirt and tan pants, began reaching into his waistband several times. Based upon [Appellant's] evasive behavior and high crime area, along with fearing for their safety, police instructed him to stop and show his hands. [Appellant], appearing "panicky", refused to comply, positioned himself behind the other two compliant individuals, and continued to reach into his waistband. Police continued to instruct him to show his hands. [Appellant] then fled, discarded an item from his pants (later identified as a firearm), and continued to run until he was apprehended and placed into custody. [Appellant] struggled with police during his arrest. Police recovered the firearm in front of 334 East 3rd Street.

After his arrest, police became aware that [Appellant] had a prior firearms conviction and did not have a valid license to carry a firearm.

Trial Court Opinion, 4/30/14, at 1-2.

Appellant filed an omnibus pre-trial motion, which included both a writ of *habeas corpus* and a suppression motion. Appellant contested both the Commonwealth's *prima facie* evidence and whether he was lawfully stopped and arrested. With respect to the latter contention, Appellant averred that he was illegally arrested when police approached him in the backyard and, drawing their weapons, directed him to put his hands in the air. He submitted that police lacked probable cause

to detain him and that his subsequent discarding of his weapon while fleeing from police should have been suppressed.

The trial court ruled that the initial encounter with Appellant was a mere encounter. It continued that once Appellant acted suspiciously in a high-crime area at night by reaching into his waistband, police had reasonable suspicion to conduct an investigatory detention. Once Appellant fled and threw his weapon away, police had probable cause to arrest Appellant. The court also held that the Commonwealth's evidence was sufficient to establish a *prima facie* case of the charges alleged.

Appellant proceeded to a jury trial. The jury found Appellant guilty of the aforementioned offenses. Appellant had prior adult convictions and juvenile adjudications that precluded him from possessing a firearm. The court sentenced Appellant on September 3, 2014, to five to ten years imprisonment for the person not to possess a firearm offense and a consecutive period of two years probation for the resisting arrest count. The court imposed no further sentence for the remaining charges. This timely appeal ensued. The sentencing court directed Appellant to file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Counsel complied, and the sentencing court indicated that the pre-trial opinion authored by the trial judge adequately addressed Appellant's issues. Similarly, the trial judge issued a Rule 1925(a) order setting forth that the reasons for the denial of Appellant's suppression and *habeas* claims could be found in its April 30, 2014 opinion.

*Commonwealth v. Martin*, 1616 WDA 2014 (unpublished memorandum) (filed November 9, 2015) (footnotes omitted).

Appellant's counsel filed a petition to withdraw and an accompanying *Anders* brief that raised two separate questions: a suppression claim and an issue relative to the *prima facie* case developed at Appellant's preliminary hearing. However, counsel only addressed the *prima facie* case position. We agreed that Appellant's position that the Commonwealth failed to establish a

*prima facie* case against him was frivolous, but remanded for the preparation of either a merits brief or a compliant **Anders** brief relative to the suppression issue.

Counsel again contends that there are no non-frivolous issues to be reviewed and sets forth two separate issues:

A. Whether the Appellant was subject to an illegal arrest in violation of his constitutional rights pursuant to the Fourth Amendment.

B. Whether the Appellant's conviction, based on his arrest and subsequently discovered evidence was in error due to the fact that the police lacked probable cause to arrest the Appellant and the Commonwealth ultimately failed to establish a prima facie case.

**Anders** brief at 3.

Again, we reiterate that we do not consider the merits of claims raised in an **Anders** brief without first reviewing a request to withdraw. **Commonwealth v. Cartrette**, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*). Counsel must meet three procedural requirements in order to withdraw: 1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has concluded that the appeal is frivolous; 2) provide a copy of the **Anders** brief to the defendant; and 3) inform the defendant that he has the right to retain private counsel or raise, *pro se*, additional arguments that the defendant deems worthy of the court's attention. **Id**.

Counsel's second petition to withdraw provides that she made a conscientious review of the record and concluded that the appeal is wholly frivolous. Counsel advised Appellant for a second time that she was withdrawing and furnished him with copies of both the petition to withdraw and *Anders* brief. Further, counsel instructed Appellant that he has the right to retain new counsel and reiterated that he can proceed *pro se* and raise any issues he believes this Court should consider. Thus, we find counsel has adequately complied with the procedural requirements of *Anders*.

We now consider whether counsel's *Anders* brief meets the substantive elements of *Santiago*. Pursuant to *Santiago*, an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361.

Counsel included a factual background of the case and cited to the record. She concludes that Appellant's appeal is frivolous and sets forth case law that holds that his issues would not entitle him to relief. We previously addressed Appellant's second claim, finding it frivolous.

- 5 -

Therefore, we address Appellant's suppression issue. Appellant claimed that he was illegally arrested without probable cause. Counsel concludes that police did not initially arrest Appellant but were involved in an investigative detention. Appellant then fled and discarded his gun. In counsel's view, Appellant was not subjected to an illegal arrest.

In reviewing "a court order denying a suppression motion, we consider the factual findings of the suppression court and whether they are supported by record evidence." *Commonwealth v. Coleman*, 2015 PA Super 258, *7. "We consider only the evidence of the Commonwealth's witnesses and testimony of the defendant's witnesses that are not contradicted by the suppression record." *Id*. We are bound by the suppression court's factual findings so long as they are supported by the record. *Id*. This Court will only reverse where the legal conclusions based on the court's factual findings are erroneous. *Id*. Thus, "we are not bound by the legal determinations of the suppression court." *Id*.

We begin by noting that, in evaluating interaction between law enforcement and other citizens, Pennsylvania courts look to whether the interaction is a mere encounter, an investigatory detention, or a custodial detention, *i.e.*, an arrest. A mere encounter does not require police to have any level of suspicion that the person is engaged in wrongdoing. *Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa.Super. 2012). At the same time, such an encounter does not carry any official compulsion for the

party to stop or respond. *Id*. An investigative detention, on the other hand, subjects an individual to a stop and a short period of detention. *Id*. However, to conduct an investigative detention, police must have reasonable suspicion of criminal activity. *Id*.

"[T]his standard is met 'if the police officer's reasonable and articulable belief that criminal activity was afoot is linked with his observation of suspicious or irregular behavior on behalf of the particular defendant stopped.'" *Commonwealth v. Kearney*, 601 A.2d 346, 348 (Pa.Super. 1992). It is well-settled that "[m]ere presence near a high crime area or in the vicinity of a recently reported crime, is not enough to warrant a *Terry* stop." *Id*. Rather, police "must observe irregular behavior before he initiates a stop and, concurrently to his observation, he must hold a belief that criminal activity is afoot." *Id.*

We consider what level of interaction occurred under a totality of the circumstances test. *Commonwealth v. Williams*, 73 A.3d 609, 615-616 (Pa.Super. 2013). This standard is an objective one, and looks to the reasonable belief of the citizen and not the subjective view of law enforcement. *Commonwealth v. Lyles*, 54 A.3d 76, 83 (Pa.Super. 2012). "In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained." *Id*. at 79-80. Accordingly, we look to

whether "in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave." *Id*. at 79.

It is also well-settled that "even a combination of innocent facts, when taken together, may warrant further investigation[.]" ***Commonwealth v. Kemp***, 961 A.2d 1247, 1255 (Pa.Super. 2008) (*en banc*); ***see also Commonwealth v. Cook***, 735 A.2d 673, 676 (Pa. 1999). As this Court cogently stated in ***Commonwealth v. Riley***, 715 A.2d 1131, 1135 (Pa.Super. 1998), "Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal. . . . Rather, we view the circumstances through the eyes of a trained officer, not an ordinary citizen."

Instantly, police were given a description of an individual named Ronnie Washington as a black male in grey sweatpants and a white t-shirt. While looking for this individual in a high crime area after 11:00 p.m., officers saw a person they believed matched that description. That individual ran behind a house after seeing police. The officer followed him and encountered Appellant and several other individuals.

Appellant was wearing a red shirt and tan pants. Upon seeing police, however, he reached into his waistband on multiple occasions. Based on these facts, police, with their weapons drawn, demanded that he stop and show his hands. Appellant did not comply, positioned himself behind two of the other individuals, and continued to reach into his waistband. Police

- 8 -

again demanded that he show his hands. Instead, Appellant fled and discarded his weapon.

The suppression court found that when police first approached Appellant it was a mere encounter. However, it ruled that this encounter eventually ripened into an investigative detention after they saw him reach into his waistband several times in a high crime area late at night. Police at that point instructed Appellant to raise his hands. Since Appellant refused and continued to reach into his waistband before fleeing and discarding the weapon, the court found that police had probable cause to arrest Appellant.

We agree. In a high crime area, late at night, Appellant's repeated reaching into his waistband after seeing police justified a brief investigative detention. Appellant's refusal to desist from reaching into his waistband warranted police in demanding that he raise his hands and the drawing of their weapons. *Commonwealth v. Coleman*, 19 A.3d 1111, 1116-1117 (Pa. Super. 2011) ("the fact that Officer Fisher told Appellant to take his hands out of his pockets did not turn the encounter into a seizure. This Court has stated that 'if during a mere encounter, an individual on his own accord, puts his hands in his pocket, thereby creating a potential danger to the safety of a police officer, the officer may justifiably reach for his side arm and order the individual to stop and take his hand out of his pocket.'"). Appellant's subsequent flight was not unlawfully provoked and he abandoned his weapon. The suppression court did not err. We add that we have

reviewed the certified record and find no other preserved issues or non-waivable claims that might be advanced that are meritorious.[1]  Accordingly, we agree that Appellant's appeal is wholly frivolous.

Petition of Emily M. Merksi, Esq., to withdraw is granted.  Judgment of sentence affirmed.

Judge Donohue did not participate in this decision.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date:  2/16/2016

---

[1]  Appellant did object to the dismissal of a juror during trial, who it was determined had lied regarding various interactions with police.  Appellant did not raise this issue in his Rule 1925(b) statement. In addition, we are cognizant that Appellant agreed to proceed with eleven jurors.