J-S37042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAMEL FLUKER | : | No. 1839 MDA 2016 |

Appeal from the Order entered October 17, 2016
in the Court of Common Pleas of Berks County,
Criminal Division, No(s):  CP-06-CR-0001609-2014

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JULY 17, 2017**

The Commonwealth of Pennsylvania appeals from the Order granting the Motion to suppress evidence filed by Jamel Fluker ("Fluker").  We affirm.

The suppression court set forth the relevant facts underlying this appeal as follows:

> On July 30, 2013, [Reading Police] Officers arrived at 645 North Front Street, Reading, Berks County, Pennsylvania[,] to assist Children and Youth Services workers, who were taking custody of several children.  Officers were notified that [] Fluker, … [a] resident of the home [and the father of some of the children], had an outstanding bench warrant.  When the officers arrived at the scene, [Fluker] was not present.
>
> [Fluker] subsequently did arrive, and an officer asked him his name.  When [Fluker] stated his name, he was placed in handcuffs.[1]  An officer then asked to have the warrant confirmed.  While awaiting confirmation, Officer [Joseph] Ring [("Officer Ring")] testified that [Fluker] told him that he had crack cocaine on his person.  There was no testimony presented by the Commonwealth of any question asked to elicit this statement.  []

---

[1] Notably, the police did not inform Fluker of his rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966), and its progeny.

N.T.[,] pp. 9-10, 8/1/2016. The cocaine was then retrieved from [Fluker's] left pocket, and [Fluker] was placed in the police wagon to await police transport. However, the bench warrant could not be confirmed, and [Fluker] was released approximately thirty [] minutes later.

[Fluker] testified that, after he was handcuffed, [] Officer [Ring] asked him if he had anything on his person. N.T.[,] pp. 36-37, 8/1/2016. [Fluker] stated that he did, and the crack cocaine was removed. ***Id.*** [Fluker] further testified that he was in the police wagon for approximately an hour and a half before he was released. ***Id.***

Suppression Court Opinion, 2/1/17, at 2 (footnote added).

In December 2013, the Commonwealth charged Fluker with one count of possession of a controlled substance.[2] Following several delays (attributable to, *inter alia*, Fluker's application to the Berks County Intermediate Punishment Program, and its eventual rejection of Fluker's application), on April 15, 2016, Fluker filed an Omnibus Pretrial Motion ("the OPT Motion"). Therein, Fluker sought suppression of the narcotics (and his inculpatory statement) as the fruit of an unlawful custodial detention wherein the police did not inform him of his ***Miranda*** rights. The suppression court scheduled the matter for a suppression hearing (hereinafter "the OPT Hearing") on April 25, 2016.[3] Fluker failed to appear at the OPT Hearing, in response to which the suppression court dismissed the OPT Motion and authorized the issuance of a bench warrant if Fluker did not return to the

---

[2] 35 P.S. § 780-113(a)(16).

[3] The suppression court later stated that "the [] OPT [H]earing was scheduled on short notice." Suppression Court Opinion, 2/1/17, at 6.

jurisdiction within one week. Four days later, Fluker appeared to address the bench warrant, at which time the suppression court rescinded it.

On May 12, 2016, Fluker filed a Motion to relist the OPT Motion ("the Motion to Relist"). Therein, Fluker asserted that his failure to appear at the OPT Hearing was unavoidable because he was outside of the jurisdiction with a group of people, on a job for his employer that ran over schedule, and unable to return on his own due to his dependence upon the group's transportation. Following a hearing on the Motion to Relist, held on May 19, 2016 ("the Motion to Relist Hearing"), the suppression court relisted the OPT Motion for a pretrial hearing, and ordered Fluker to pay $400 to reimburse the Commonwealth and its witnesses for his failure to appear at the OPT Hearing.

At the relisted suppression hearing on August 1, 2016, Officer Ring, Fluker, and two other police officers involved in the July 30, 2013 incident testified.

By an Order entered on October 18, 2016, the suppression court granted the OPT Motion, ruling, *inter alia*, that the evidence against Fluker was inadmissible as being the product of a custodial interrogation wherein police did not inform him of his **Miranda** rights. The Commonwealth timely

J-S37042-17

filed a Notice of Appeal,[4] followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.

The Commonwealth now presents the following issues for our review:

A. Did the suppression court err by concluding that [] Fluker was subjected to a custodial interrogation while he was briefly detained as officers awaited verification of a warrant for his arrest?

B. Did the suppression court err by permitting the filing and subsequent re–filing of [the OPT] [M]otion …[,] well outside the time limitations imposed by Pa.R.Crim.P. 579 and 581[,] where the Commonwealth was prejudiced by the delay caused by the late filing?

Brief for the Commonwealth at 5 (some capitalization omitted).

The Commonwealth first challenges the suppression court's grant of the OPT Motion, asserting that Fluker's inculpatory statement, and the narcotics seized thereafter, was admissible as being the product of an investigative detention, wherein **Miranda** warnings are not required. **Id.** at 11.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

---

[4] In filing this interlocutory appeal, the Commonwealth complied with Pennsylvania Rule of Appellate Procedure 311(d), which provides that "[i]n a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d).

*Commonwealth v. Carter*, 105 A.3d 765, 768 (Pa. Super. 2014) (*en banc*) (citation omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). There are three categories of interactions between police and a citizen:

> The first of these is a "mere encounter" (or request for information)[,] which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention[,]" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Carter*, 105 A.3d at 768 (citation omitted).

*Miranda* warnings must be provided to a defendant only if he is subjected to a custodial interrogation. *Commonwealth v. Garvin*, 50 A.3d 694, 698 (Pa. Super. 2012).

> The standard for determining whether an encounter with the police is deemed "custodial" or police have initiated a custodial interrogation is an objective one based on a totality of the circumstances, with due consideration given to the reasonable impression conveyed to the person interrogated. Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way. "Interrogation" is police conduct calculated to, expected to, or likely to evoke admission. When a person's inculpatory statement is not made in response to custodial

interrogation, the statement is classified as gratuitous, and is not subject to suppression for lack of warnings.

The appropriate test for determining whether a situation involves custodial interrogation is as follows:

> The test for determining whether a suspect is being subjected to custodial interrogation[,] so as to necessitate **Miranda** warnings[,] is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation.

Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions. The fact that a police investigation has focused on a particular individual does not automatically trigger "custody," thus requiring **Miranda** warnings.

**Commonwealth v. Baker**, 24 A.3d 1006, 1019-20 (Pa. Super. 2011)

(internal citations, brackets and quotations omitted) (quoting

**Commonwealth v. Mannion**, 725 A.2d 196, 200 (Pa. Super. 1999)); **see**

**also Commonwealth v. Gonzalez**, 979 A.2d 879, 888 (Pa. Super. 2009)

(stating that the test for custodial interrogation does not depend upon the

subjective intent of the law enforcement officer interrogator). Moreover,

"[w]hile the use of handcuffs is not dispositive of a custody analysis, and we

still must conduct a totality-of-the-circumstances analysis, the use of restraints is generally recognized as a hallmark of a formal arrest." ***Commonwealth v. Cooley***, 118 A.3d 370, 379 (Pa. 2015) (citations and internal quotation marks omitted).

The Commonwealth argues that the suppression court erred by concluding that Fluker's detention was the functional equivalent of a custodial arrest, as opposed to an investigative detention. Brief for the Commonwealth at 17. According to the Commonwealth, the following facts support a determination that the police conducted an investigative detention of Fluker, and not a "full-blown custodial arrest": (1) Fluker "was patted-down and not actually searched before being placed in the police wagon"; (2) "Officer Ring testified that Fluker was being detained – not arrested – at that time[,] since the warrant had not yet been confirmed"; (3) "[f]orce was neither used nor threatened"; (4) "[a]lthough Fluker was handcuffed, he was not transported from the scene"; (5) "Fluker was detained no longer than necessary and ultimately released when the warrant could not be confirmed"; and (6) "throughout his entire interaction with police, Fluker remained essentially at the same location where the officers had first encountered him." ***Id.*** at 16-17; ***see also id.*** at 15 (asserting that "all of the important events for suppression purposes – the initial detention [of Fluker], subsequent questioning, and location of the drugs – took place during the first fifteen minutes of Fluker's interaction with the police …..").

In its Opinion, the suppression court addressed the Commonwealth's challenge as follows:

> A review of the relevant factors in this case shows that the conditions surrounding [Fluker's] interaction with police were so coercive as to constitute the functional equivalent of [an] arrest. [Fluker] was placed in handcuffs after officers informed him that there was an active warrant for his arrest. N.T.[,] pg. 35, 8/1/2016. There were two police officers present during the interaction. [Fluker] was then moved from his porch to the sidewalk and then to the police wagon. He was in the police wagon for approximately one hour. N.T.[,] pg. 36, 8/1/2016. In totality, the [suppression c]ourt finds it unlikely that [Fluker] would have believed that he was free to move as he wished. The evidence shows that his freedom of movement was restricted. Given these circumstances, the interaction between [Fluker] and the police reaches the level of a functional arrest.

Suppression Court Opinion, 2/1/17, at 4.

Our review discloses that the suppression court's findings are supported by the record, and we agree with its legal determination. *See id.* Of particular importance in the totality of the circumstances analysis is the fact that Officer Ring placed Fluker in handcuffs prior to patting him down and questioning him. *See Cooley*, *supra* (noting that "the use of restraints is generally recognized as a hallmark of a formal arrest."). Moreover, the police never informed Fluker that he was not under arrest, or that the handcuff detention was routine policy pending confirmation of the warrant. *See id.* at 379 (holding that the parolee was subjected to the functional equivalent of an arrest where he was (1) handcuffed immediately upon arriving at his parole agent's office; (2) questioned about new crimes and searched; and (3) never informed that "he was not under arrest or that he was restrained pursuant to

routine policy."). Accordingly, because Fluker's inculpatory statement was made during a custodial detention, wherein he was not given **Miranda** warnings, the suppression court properly suppressed this evidence, and the narcotics found on his person, as fruits of the poisonous tree. **See Baker**, **supra**.[5]

In its second issue, the Commonwealth argues that the suppression court erred by permitting Fluker to re-file the OPT Motion, outside of the time limitations imposed by Pennsylvania Rules of Criminal Procedure 579[6] and 581.[7] **See** Brief for the Commonwealth at 18-24. The Commonwealth points out that the Motion to Relist Hearing was held over two years after the filing of the Criminal Complaint, and alleges that the delay, all of which was attributable to Fluker, "unfairly prejudiced [the Commonwealth] in its ability to meet its burden concerning a possessory drug offense that occurred over three years earlier." **Id.** at 18; **see also id.** at 22-23 (explaining the prejudice that the Commonwealth allegedly suffered).

---

[5] The cases that the Commonwealth relies upon in support of its first issue, **Commonwealth v. Ellis**, 662 A.2d 1043 (Pa. 1995), and **Commonwealth v. Freeman**, 150 A.3d 32 (Pa. Super. 2016), are inapposite, as those cases involved investigative detentions, wherein neither defendant was handcuffed.

[6] Rule 579 provides that, generally, "the omnibus pretrial motion for relief shall be filed and served within 30 days after arraignment, unless opportunity therefor did not exist, or the defendant or defense attorney, or the attorney for the Commonwealth, was not aware of the grounds for the motion, or unless the time for filing has been extended by the court for cause shown." Pa.R.Crim.P. 579(A).

[7] Rule 581 provides, *inter alia*, that "[i]f [a] timely motion [to suppress] is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived." Pa.R.Crim.P. 581(B).

Preliminarily, we must address whether the Commonwealth preserved this issue for our review. It is well established that "[o]ne must object to errors, improprieties or irregularities at the earliest possible stage of the criminal adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Commonwealth v. Rosser*, 135 A.3d 1077, 1086 (Pa. Super. 2016) (citation and ellipses omitted). "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

Here, the Commonwealth did not object before the suppression court that the OPT Motion was untimely, despite having had multiple opportunities to do so, nor did it articulate any prejudice that it suffered as a result of the delay.[8] Accordingly, this claim is waived. *See id.*; *see also Commonwealth v. Colavita*, 993 A.2d 874, 891 (Pa. 2010) (stating that "[w]here the parties fail to preserve an issue for appeal, the Superior Court

---

[8] We acknowledge that (1) at the OPT Hearing, the prosecutor requested the suppression court to dismiss the OPT Motion for Fluker's failure to appear, and issue a bench warrant, N.T., 4/25/16, at 2; and, (2) at the Motion to Relist Hearing, the prosecutor requested the suppression court to deny the Motion to Relist, pointing to Fluker's failure to appear at that hearing or the OPT Hearing, N.T., 5/19/16, at 2. However, on neither occasion did the prosecutor argue that the OPT Motion was untimely or articulate any prejudice to the Commonwealth attributable to the delay. *See Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016) (stating that a new theory of relief cannot be raised for the first time on appeal).

may not address that issue *sua sponte*." (citation omitted)).[9]  Furthermore, the fact that the Commonwealth raised this issue in its Rule 1925(b) Concise Statement does not preserve this issue on appeal.  ***See Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1288 (Pa. Super. 2004) (holding that "[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.") (citation omitted).

Accordingly, as neither of the Commonwealth's issues entitle it to relief, and the suppression court did not err in granting the OPT Motion, we affirm the Order on appeal.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017

---

[9] Nevertheless, even if this claim was not waived, we would determine that it is without merit based upon the reasoning advanced in the suppression court's Opinion.  ***See*** Suppression Court Opinion, 2/1/17, at 5-6 (stating, *inter alia*, that "[w]hether the interests of justice require an extension of the thirty[-]day time limit to file an omnibus pretrial motion is a 'matter for the discretion of the trial judge.' [***Commonwealth v.***] ***Long***, 753 A.2d 272, 279 (Pa. Super. 2000)[; ***see also id.*** at 280 (stating that "[a] trial judge should exercise discretion to hear an untimely [] suppression motion on this basis in such situations where the merits of [the] [] motion were so apparent that justice required it be heard.") (citation and quotation marks omitted).]  In this case, the [suppression] court found that the interests of justice were best served by allowing [Fluker] to refile the [OPT M]otion[,]" where "the Commonwealth has failed to articulate any particular prejudice" it suffered as a result of the extension).

- 11 -