J-S42008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES HOUSTIS THOME | : | |
| | : | |
| Appellant | : | No. 579 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 22, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0000386-2023

BEFORE: LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.: **FILED JANUARY 31, 2025**

James Houstis Thome appeals from the judgment of sentence, entered in the Court of Common Pleas of Schuylkill County, following his convictions after a non-jury trial of two counts of possession of a controlled substance,[1] and one count each of possession with intent to deliver,[2] possession of drug paraphernalia,[3] possession of a small amount of marijuana,[4] and two summary traffic offenses.[5] After careful review, we affirm.

---

[1] 35 P.S. § 780-113(a)(16).

[2] *Id.* at § 780-113(a)(30).

[3] *Id.* at § 780-113(a)(32).

[4] *Id.* at § 780-113(a)(31)(i).

[5] 75 Pa.C.S.A. § 3309(1) (driving on roadways laned for traffic); *id.* at § 3310(a) (following too closely).

The trial court summarized the factual history of this matter as follows:

On January 15, 2023, Corporal [John] Waznak was on a routine patrol on I-81 northbound when he effectuated a traffic stop on [Thome] at 11:44 p.m. [due to Thome's] failure to maintain his vehicle in its lane of travel and for following a commercial vehicle too closely. . . . Corporal Waznak testified that [Thome] told him he was making a day trip from Lebanon to Scranton. Corporal Waznak testified that he immediately became suspicious for criminal activity[,] as he identifies the trip between Lebanon and Scranton as a drug trafficking route and both Lebanon and Scranton as "source cities."[6] Corporal Waznak testified that his suspicion increased when [Thome] began [] conversation that had nothing to do with the traffic stop[.]

Corporal Waznak asked [Thome] to exit his vehicle. He had [Thome] stand at his patrol vehicle at the front[-]passenger side while he looked up [Thome's] criminal history and saw [that he had] prior drug offenses. Corporal Waznak did not read [Thome] his **Miranda** warnings.[7] He asked [Thome] if there was anything illegal in his vehicle. [Thome] admitted that there was something illegal in his car and that it was methamphetamine. Corporal Waznak asked to search his vehicle and [Thome] initially denied consent. Corporal Waznak then detailed the steps he would be taking because of the denial and [Thome] thereafter agreed to give consent to search the vehicle. The vehicle was searched, drugs and paraphernalia were found, and [Thome] was arrested.

Trial Court Opinion, 5/23/24, at 2-3.[8]

The Commonwealth subsequently charged Thome with the above-mentioned crimes. On May 25, 2023, Thome filed a pretrial motion seeking

---

[6] Corporal Waznak defined "source cities" as "known locations of controlled substance uses, controlled substance possession, and the manufacturing and sales of controlled substances." N.T. Suppression Hearing, 7/31/23, at 15.

[7] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[8] These are the same findings of fact that the trial court issued in its order and opinion denying Thome's motion to suppress on October 13, 2023. **See** Order and Opinion, 10/13/23, at 2-3.

to suppress his inculpatory statement and all evidence derived from the subsequent vehicle search. Thome alleged that Corporal Waznak subjected him to a custodial interrogation when Waznak removed him from the vehicle and continued to question him. On July 31, 2023, the trial court conducted a hearing on Thome's motion. The Commonwealth presented testimony from Corporal Waznak and played the motor vehicle recording (MVR) of the traffic stop for the court. Thome did not present evidence at the hearing. On October 13, 2023, the trial court entered an order denying Thome's suppression motion. On January 25, 2024, the trial court found Thome guilty of all charges. On March 22, 2024, the court sentenced Thome to an aggregate term of 6 to 12 years of incarceration.

Thome filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thome now presents the following claim for our review: "Whether the trial court committed reversible error when it concluded that the vehicle stop of [Thome] by [Corporal Waznak] constituted an investigative detention that did not rise to the level of a custodial detention and[,] therefore[,] **Miranda** warnings were not necessary[?]" Appellant's Brief, at 5.

Our standard of review for the denial of a motion to suppress is well-settled:

> [The appellate] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the

suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (citations omitted).

Courts of this Commonwealth categorize police interactions with members of the public based on three general tiers of increasing intrusiveness, which require increasing levels of suspicion that a defendant is engaging in criminal activity: (1) mere encounters, which require no suspicion; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995). Additionally, the Pennsylvania Supreme Court has explained that "the term 'custodial detention' has generally been used by the United States Supreme Court to describe incidents in which the police do not verbally inform a suspect that he is under arrest, but[,] rather, undertake actions [that] result in the conditions of the detention becoming so coercive as to amount to the functional equivalent of a formal arrest." *Id.* at 1047 n.3 (citation omitted).

Critical to our present inquiry, "*Miranda* warnings are required only when a suspect is in custody." *Commonwealth v. Pakacki,* 901 A.2d 983, 987 (Pa. 2006). "In order to trigger the safeguards of *Miranda*, there must

be both custody and interrogation." ***Commonwealth v. Heggins****,* 809 A.2d 908, 914 (Pa. Super. 2002). In evaluating whether ***Miranda*** warnings were necessary, a court must consider the totality of the circumstances. ***See Commonwealth v. Gaul****,* 912 A.2d 252, 255 (Pa. 2006).

"The usual traffic stop constitutes an investigative rather than a custodial detention, unless, under the totality of the circumstances, the conditions and duration of the detention become the functional equivalent of arrest." ***Commonwealth v. Mannion****,* 725 A.2d 196, 202 (Pa. Super. 1999) (en banc). "Since an ordinary traffic stop is typically brief in duration and occurs in public view, such a stop is not custodial for ***Miranda*** purposes." ***Id.*** at 202. Thus, "police need only give ***Miranda*** warnings while detaining a suspect by the side of a public highway when the suspect [has] actually [been] placed under arrest or when the questioning of the suspect is so prolonged or coercive as to approximate the atmosphere of a station house interrogation." ***Commonwealth v. Toanone****,* 553 A.2d 998, 1003 (Pa. Super. 1989).

During an ordinary traffic stop, police may, as a matter of course, order the driver and passengers to exit the vehicle until the stop is completed. ***See Commonwealth v. Wright****,* 224 A.3d 1104, 1109 (Pa. Super. 2014); ***see also Commonwealth v. Pratt****,* 930 A.2d 561, 567-68 (Pa. Super. 2007) ("allowing police officers to control all movement in a traffic encounter . . . is a reasonable and justifiable step towards protecting their safety."). Further, officers may ask detainees a "moderate number of questions" to determine

- 5 -

identity and any other information to confirm or dispel the officer's suspicions. *See Commonwealth v. Spence*, 290 A.3d 301, 314 (Pa. Super. 2023) (citation omitted). However, an ordinary traffic stop may become custodial "when the stop involves coercive conditions, including, but not limited to, the suspect being forced into a patrol car and transported from the scene or being physically restrained." *Mannion*, 725 A.2d at 202.

The factors a court uses to determine whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened, or used force; and the investigative methods employed to confirm or dispel suspicions. *Mannion*, 725 A.2d at 200; *see also Commonwealth v. Williams*, 650 A.2d 420, 427 (Pa. 1994) (setting out factors to determine whether a person is in custody for *Miranda* purposes). "[A] reviewing court is to consider the particular facts of each case in order to determine whether a detention is custodial." *Mannion*, 725 A.2d at 201.

Additionally, we must give due consideration "to the reasonable impression conveyed to the person interrogated." *Id.* at 200. Indeed, whether a seizure is custodial in nature turns on "whether the suspect is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or

movement is restricted by said interrogation." ***Commonwealth v. Gonzalez***, 546 A.2d 26, 29 (Pa. 1988) (emphasis added).

Instantly, the trial court found that:

[Thome] was pulled over for a traffic stop for traveling too closely behind a commercial vehicle and being unable to maintain his lane of travel. [Thome] was never placed in the back of the patrol vehicle or handcuffed. He was never transported anywhere, there were no physical restraints used[,] and Corporal Waznak never threatened or used force against [Thome]. Corporal Waznak described his questioning as pleasant and cordial and testified that the entire experience with [Thome] was not antagonistic or aggressive. . . . This Court finds this did not rise to the level of a custodial interrogation and therefore ***Miranda*** did not come into play.

Trial Court Opinion, 5/23/24, at 6.

Upon review, we conclude that the trial court's factual determinations are supported by the record and that its legal conclusions are sound. ***Yandamuri***, 159 A.3d at 516. We note, and Thome concedes, that Corporal Waznak effectuated a lawful vehicle stop based upon probable cause where Thome failed to stay in his lane of travel and followed too closely behind a commercial vehicle. ***See*** Commonwealth Ex. 1, at 0:00-2:00; Appellant's Brief, at 8. A review of the MVR documenting the traffic stop demonstrates that Corporal Waznak's behavior was not overtly threatening, and the tone of the conversation was relaxed and friendly during the entirety of the encounter. ***See*** Commonwealth Ex. 1, at 2:44-15:00. Thome was not restrained or transported, and Corporal Waznak did not use or threaten force at any point during the interaction. ***Id.***

While Corporal Waznak did ask Thome to exit his vehicle and stand at the front passenger window of the patrol car, he did so only as a matter of course[9] and did not coerce or threaten Thome. *See Wright*, 224 A.3d at 1109 (explaining that officer may, as matter of course, order driver to exit vehicle during ordinary traffic stop). While looking up Thome's information on his computer, Corporal Waznak continued to make friendly conversation and inquired about Thome's travel and employment. *See* Commonwealth Ex. 1, at 7:36-10:32; *see also Spence*, 290 A.3d at 314 (explaining officers may ask moderate number of questions during routine traffic stop to determine identity and other information).

Approximately three minutes after relocating to the patrol vehicle, Corporal Waznak asked for the first time whether there was anything illegal inside Thome's vehicle,[10] to which Thome immediately replied in the affirmative. Commonwealth Ex. 1, at 7:36-10:32. Thus, the officer's questioning was not so "prolonged or coercive as to approximate the atmosphere of a station house interrogation" and no *Miranda* warning was required. *See Toanone*, 553 A.2d at 1003. We, therefore, concur with the

---

[9] On the MVR, Corporal Waznak explained to Thome that: "the way I like to conduct my traffic stops personally is [that] what I'm going to have you do is stand at my passenger[-]side window and at the same time I'm going to work on my computer and we're going to finish up the business with this traffic stop and get rocking if we can." Commonwealth Ex. 1, at 6:17-6:29.

[10] Corporal Waznak testified at the suppression hearing that at this point he had looked up Thome's criminal history and found that Thome had prior drug offense convictions. *See* N.T. Suppression Motion Hearing, 7/31/23, at 26.

trial court's conclusion that this ordinary traffic stop did not rise to the level of a custodial detention.

In light of the foregoing, the trial court properly admitted Thome's statements, as he was not subject to a custodial interrogation and, thus, no **Miranda** warning was required. Thome, therefore, is accorded no relief on his claim.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 01/31/2025